IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONSTRUCTION COST DATA, LLC, JOB ORDER CONTRACTING GROUP, LLC, AND MANAGED JOC SOLUTIONS, LLC, | § § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Cause No. 16-cv-00114 JURY DEMANDED |
| THE GORDIAN GROUP, INC. AND R.S. MEANS COMPANY, LLC | § § § | |
| Defendants. | § § | |
| THE GORDIAN GROUP, INC. AND R.S. MEANS COMPANY, LLC | § § § | |
| Third-Party Plaintiffs, | § § § | |
| v. | § § § | |
| CONSTRUCTION COST DATA, LLC, JOB ORDER CONTRACTING GROUP, LLC, MANAGED JOC SOLUTIONS, LLC, ALL COST DATA INFO, LLC, BENJAMIN STACK, AND MARK POWELL, | § § § § § § § | |
| Third-Party Defendants. | § | |

**THE GORDIAN GROUP, INC. AND R.S. MEANS COMPANY, LLC'S ANSWER TO PLAINTIFFS' COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, THIRD-PARTY COMPLAINT AND DEMAND FOR JURY TRIAL**

## ANSWER

Defendants/Third-Party Plaintiffs THE GORDIAN GROUP, INC. ("The Gordian Group") and R.S. MEANS COMPANY, LLC ("R.S. Means") (collectively, the "Defendants" or

"Gordian Entities") by and through their undersigned attorneys, and for their answer would show the Court as follows:

## I.
## DISCOVERY CONTROL LEVEL

1.      Denied.  Defendants removed this matter to the Southern District of Texas, and discovery will no longer be conducted pursuant to TEX R. CIV. P. 190.3.

## II.
## PARTIES

2.      Denied.  Defendants are without information or knowledge sufficient to determine the corporate status of CCD, the JOC Group and MJS and whether these Parties are in good standing.

3.      Admitted.

4.      R.S. Means admits that it is a Delaware limited liability company with its principal place of business in Rockland, Massachusetts.  However, the remaining allegations are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

## III.
## JURISDICTION AND VENUE

5.      Denied.  The allegations set forth in Paragraph 5 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

6.      Denied.  The allegations set forth in Paragraph 6 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

## IV.
## FACTUAL BACKGROUND

7.      Denied.  Job order contracting is a service that provides public agencies an expedited means to procure and accomplish various types of construction projects.  It streamlines

the bid process for construction companies and public agencies by, among other things, utilizing a single competitive bid process to accomplish a wide range of construction tasks included in a unit price book that is part of the initial bid package for a job order contract.

8.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.  Accordingly, these allegations are denied.

9.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9.  Accordingly, these allegations are denied.

10.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10.  Accordingly, these allegations are denied.

11.     Denied.  R.S. Means received a contract in 1997 to update the pricing information and maintain the United States Army Corps of Engineers' ("USACE") job order contracting ("JOC") unit price book ("UPB").  In 2004, R.S. Means obtained a contract with the USACE to license R.S. Means' commercial construction cost database to the USACE.  The commercial construction cost database was created by using data owned by R.S. Means and licensed to USACE.  R.S. Means did not use the data from the 1994 USACE JOC UPB in creating its commercial construction cost database.  The Gordian Group's UPB has been in circulation since 1992, and in 1999, its name officially became the "Construction Task Catalog."

12.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.  Accordingly, these allegations are denied.

13.     Denied.  In 2014, The Gordian Group acquired R.S. Means by purchasing all of the LLC's shares, and The Gordian Group still runs R.S. Means as a subsidiary entity.

14.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.  Accordingly, these allegations are denied.

15.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.  Accordingly, these allegations are denied.

16.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.  Accordingly, these allegations are denied.  In addition, the allegations set forth in Paragraph 16 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

17.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17.  Accordingly, these allegations are denied.

18.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.  Accordingly, these allegations are denied.

19.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.  Accordingly, these allegations are denied.

20.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.  Accordingly, these allegations are denied.

21.     Denied in Part; Admitted in Part.  It is admitted only that on September 1, 2015, Gordian Group and R.S. Means sent a cease and desist letter to Construction Cost Data, LLC ("CCD") informing them that their actions constituted copyright infringement and trademark infringement and demanding that CCD, and all affiliated entities and individuals, cease and desist use of the Construction Cost Catalogue and all of R.S. Means' proprietary data; return all proprietary data of R.S. Means; remove all copies of the Construction Cost Catalogue from avenues of commerce; cease use of the title "Construction Cost Catalogue"; remove all of R.S. Means proprietary information from the website www.allcostdata.info; and confirm that CCD, and all subsidiaries and affiliated companies, and all individuals associated with these entities, will not use any of R.S. Means' construction cost data without the express written consent and license from R.S. Means.  The remaining allegations set forth in Paragraph 21 are conclusions of law to which no additional response is required.   To the extent an answer is required, the allegation are denied.

22.     Denied.  The allegations set forth in Paragraph 22 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

23.     Denied.  Defendants admit to sending a letter to Stuart Verdon, director of TCPN Facilities Solutions, but the remaining allegations are denied.

24.     After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.  Accordingly, these allegations are denied.

25.    Denied.  Defendants advised CCD's counsel that they were ready to proceed with litigation if CCD was not willing to promptly cease all production, marketing, sales, and distribution of the Construction Cost Catalogue.  In addition, Defendants sent CCD's counsel a draft of a confidentiality agreement, so that CCD's counsel could review Defendants' copyrighted work and understand the infringement occurring with CCD's Construction Cost Catalogue.

26.    Denied.  Defendants' cease and desist correspondence outlined specific evidence detailing copyright and trademark infringement.  With respect to the remaining allegations, after reasonable investigation, Defendants were without knowledge of information sufficient to form a belief as to the truth of the allegations.

27.    After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.  Accordingly, these allegations are denied.  In addition, the allegations set forth in Paragraph 16 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

28.    After reasonable investigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.  Accordingly, these allegations are denied.  In addition, the allegations set forth in Paragraph 16 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

29.    Denied.  The allegations set forth in Paragraph 29 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

## V.
## CAUSES OF ACTION

**A.     TORTIOUS INTERFERENCE WITH EXISTING CONTRACT**

30.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

31.     Denied.  The allegations set forth in Paragraph 31 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

32.     Denied.  The allegations set forth in Paragraph 32 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

33.     Denied.  The allegations set forth in Paragraph 33 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

34.     Denied.  The allegations set forth in Paragraph 34 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

**B.     TORTIOUS INTERFERENCE COMMERCIAL RELATIONSHIP**

35.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

36.     Denied.  The allegations set forth in Paragraph 36 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

37.     Denied.  The allegations set forth in Paragraph 37 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

38.     Denied.  The allegations set forth in Paragraph 38 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

39.     Denied.  The allegations set forth in Paragraph 39 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

40.     Denied.  The allegations set forth in Paragraph 40 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

C.     **CONSPIRACY TO INTERFERE WITH CONTRACT**

41.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

42.     Denied.  The allegations set forth in Paragraph 42 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

D.     **APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION**

43.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

44.     Denied.  The allegations set forth in Paragraph 44 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

45.     Denied.  The allegations set forth in Paragraph 45 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

46.     Denied.  The allegations set forth in Paragraph 46 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

## VI.
## DAMAGES

47.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

48.     Denied.  The allegations set forth in Paragraph 48 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

49.     Denied.  The allegations set forth in Paragraph 49 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

50.     Denied.  The allegations set forth in Paragraph 50 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

## VII.
## ATTORNEYS' FEES

51.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

52.     Denied.  The allegations set forth in Paragraph 52 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

## VIII.
## CONDITIONS PRECEDENT

53.     Denied.  The allegations set forth in Paragraph 53 are conclusions of law to which no answer is required.  To the extent an answer is required, the allegations are denied.

## IX.
## REQUEST FOR DISCLOSURE

54.     Denied.  Defendants removed this matter to the Southern District of Texas, and disclosure is no longer required pursuant to Rule 194.2(a)-(j) and (l) of the Texas Rules of Civil Procedure.

## X.
## JURY DEMAND

55.     The allegation in Paragraph 55 speaks for itself, and as such, no answer is required.

## XI.
## RULE 193.7 NOTICE

56.     Denied.  Defendants removed this matter to the Southern District of Texas, and the Rule 193.7 Notice pursuant to the Texas Rules of Civil Procedure is no longer applicable.

WHEREFORE, Defendants The Gordian Group and R.S. Means demand judgment in their favor and respectfully request that the Court deny Plaintiff's Original Petition in its entirety, with prejudice, and award Defendants their costs, attorneys' fee, and such other and further relief as the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

Defendants/Third-Party Plaintiffs The Gordian Group and R.S. Means, by and through their undersigned attorneys, hereby raise the following their affirmative defenses in response to the Plaintiffs' Original Petition ("Petition"):

### FIRST AFFIRMATIVE DEFENSE

The Petition fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of fraud.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred due to failure of condition precedent.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred due to failure to act in a commercially reasonable manner.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the failure to mitigate damages.

WHEREFORE, Defendants The Gordian Group and R.S. Means demand judgment in their favor and respectfully request that the Court deny Plaintiff's Original Petition in its entirety, with prejudice, and award Defendants their costs, attorneys' fee, and such other and further relief as the Court deems just and appropriate.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Defendants/Third-Party Plaintiffs The Gordian Group and R.S. Means ("Third Party Plaintiffs" or the "Gordian Entities"), by and through their undersigned counsel, hereby file these Counterclaims and Third-Party Complaint against Plaintiffs/Third-Party Defendants Construction Cost Data, LLC ("CCD"), Job Order Contracting Group, LLC ("JOC Group"), Managed JOC Solutions, LLC ("JOC Solutions"), All Cost Data Info, LLC ("All Cost Data Info"), Benjamin Stack ("Stack"), and Mark Powell ("Powell") (collectively, "Third-Party Defendants"), and aver as follows.

## I.
## INTRODUCTION

1.      This is a civil action for copyright infringement under the United States Copyright Act (17 U.S.C. § 501 *et seq.*); trademark infringement under the Lanham Act (15. U.S.C. §1114); reverse passing off and unfair competition under the Lanham Act (15 U.S.C. § 1125); and unfair competition and unjust enrichment under the common law of the state of Texas.

2.      Third-Party Defendants are offering blatant copies and re-productions of R.S. Means' copyrighted "RSMeans 2008 Data Compilation" (the "2008 File") via Third-Party Defendants' infringing work, the "Construction Cost Catalogue." Third-Party Defendants copied

the data and specific product and item descriptions from the 2008 File in making the "Construction Cost Catalogue."

3.     Third-Party Defendants' "Construction Cost Catalogue" is also an infringement of The Gordian Group's trademarked "Construction Task Catalog" that provides all of the relevant construction cost data needed to successfully execute a job order contracting program, including, but not limited to, labor, material and equipment costs.

4.     In August of 2015, Third-Party Defendants offered the infringing Construction Cost Catalogue in commerce, and specifically, in the same region and market as The Gordian Group's "Construction Task Catalog" and R.S. Means' copyrighted construction cost books.

5.     In late August of 2015, the Gordian Entities' counsel notified Third-Party Defendants of the infringing Construction Cost Catalogue.  In September of 2015, Third-Party Defendants agreed to temporarily stop using the Construction Cost Catalogue in commerce.  On December 16, 2015, counsel for CCD notified the Gordian Entities' counsel that they intend to begin using the infringing Construction Cost Catalogue in commerce again.

6.     The Gordian Entities bring this action seeking injunctive relief to stop Defendants unauthorized use and infringement of R.S. Means and Gordian Group's intellectual property and to recover for the damages caused by Third-Party Defendants' unfair competitive actions.

## II.
## PARTIES

7.     R.S. Means is a Delaware limited liability company with its principal place of business in Rockland, Massachusetts.

8.     The Gordian Group is a Georgia corporation with its principal place of business in Greenville, South Carolina.

9.      CCD is a Texas limited liability company with its principal place of business in Houston, Texas.  CCD may be served with process at 9 Greenway Plaza, Suite 1100, Houston, Texas 77046.

10.     JOC Group is a Texas corporation with its principal place of business in Houston, Texas.  JOC Group may be served with process at 11288 West Road, Houston, Texas 77065.

11.     JOC Solutions is a Texas corporation with its principal place of business in Houston, Texas.  JOC Solutions may be served with process at 9 Greenway Plaza, Suite 1100, Houston, Texas 77046.

12.     All Cost Data Info is a Virginia corporation with its principal place of business in Alexandria, Virginia.  All Cost Data Info may be served with process at 1900 Campus Commons Drive, Ste 100, Reston, VA 20191.

13.     Stack is an individual who resides at 3428 Woodside Road, Alexandria, Virginia 22310-2122.

14.     Powell is an individual who resides at 219 Rainbow Drive #11909, Livingston, Texas 77399-2019.

## III.
## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S.C. § 101 *et seq.* and pursuant to 15 U.S.C. § 1121 because it arises under the Lanham Act.  This Court has supplemental subject matter jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over the parties in this action.  CCD, JOC Group, JOC Solutions, and Powell maintain their residence in the state of Texas and have

independently transacted business in the state of Texas. All Cost Data Info's principal owner, Stack, is listed as a co-editor on the Construction Cost Catalogue, and All Cost Data Info and Stack materially contributed to the creation of the Construction Cost Catalogue. More particularly, Third-Party Defendants' acts of violating federal laws and the proprietary rights of the Gordian Entities took place, at least in part, within the state of Texas. Thus, this Court has personal jurisdiction over Third-Party Defendants.

17.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400(a) because Third-Party Defendants reside in, or have substantial connection to, this District, may be found in this District, and/or a substantial part of the events giving rise to the claims in this action occurred within this District.

## IV.
## BACKGROUND FACTS

### A.     OVERVIEW OF R.S. MEANS AND ITS INTELLECTUAL PROPERTY

18.     R.S. Means is the leading supplier of construction cost information and data compilations in North America.

19.     R.S. Means provides up-to-date construction labor and material cost data to assist owners, developers, architects, engineers, and contractors in projecting and controlling the cost of construction and renovation projects.

20.     R.S. Means has been a trusted source for construction cost data for the past 75 years.

21.     R.S. Means employs more than two dozen full-time engineers and construction cost researchers to diligently research the constantly changing labor, equipment and material costs associated with performing construction work throughout the United States by verifying its data against thousands of localized sources.

22.     R.S. Means compiles the data and then drafts the text descriptions for all products, materials, labor, and construction information into hundreds of thousands of lines of data.

23.     The hundreds of thousands of lines of data are stored in R.S. Means' proprietary construction cost database.

24.     R.S. Means provides the construction cost data from the database in many usable formats, including book publications, online, compact discs, and ASCII files.

25.     Each year, R.S. Means publishes roughly two dozen construction cost books resulting from R.S. Means' proprietary process.

26.     R.S. Means owns more than 100 copyright registrations for these construction books created from the construction cost database in the last five years alone.

27.     In addition to authoring and publishing construction cost data in book format, R.S. Means provides electronic copies of the construction cost data in an ASCII file format to construction cost estimating software providers ("Software Resellers") for incorporation into the Software Resellers' construction cost estimating software products.

28.     The ASCII file is provided to each Software Reseller pursuant to a license agreement that limits the use of the ASCII file for incorporation into the Software Reseller's software for license to an end user, and prevents any unauthorized disclosure or distribution of the construction cost data for any other purpose.

29.     In 2008, R.S. Means created the 2008 File from the construction cost database tailored to the specifications of contracting services needed by the U.S. Army Corps of Engineers ("USACE").

30.     R.S. Means has a copyright registration for the 2008 File that R.S. Means provided to the USACE, designated "RSMeans 2008 Data Compilation." *See* Copyright Registration, No. TX 8-094-975, attached as Exhibit A.

31.     R.S. Means' creation of construction task descriptions and other text, as well as the creative combination of the product descriptions, estimates, figures, and categories contained in the 2008 File, makes the 2008 File an independently protected work under the United States Copyright Laws.

32.     This creative combination is a wholly original work and fixed in various tangible products, thereby qualifying as copyrightable subject matter under the United States Copyright Act, 17 U.S.C. Sections 101 *et seq*.

33.     R.S. Means is the sole owner and proprietor of the 2008 File.

34.     R.S. Means expended a considerable investment of time, reputation, effort, and resources in creating, developing, marketing, and otherwise promoting the R.S. Means brand and the 2008 File.

35.     R.S. Means, as the rightful owner of the 2008 File, is responsible for protecting its property interest from the infringing actions of others.

**B.     OVERVIEW OF THE GORDIAN GROUP AND ITS INTELLECTUAL PROPERTY**

36.     The Gordian Group is a business offering "job ordering contracting," a service that provides public agencies an expedited means to procure and accomplish various types of construction projects.

37.     "Job ordering contracting" streamlines the bid process for construction companies and public agencies by, among other things, utilizing a single competitive bid process to

accomplish a wide range of construction tasks included in a unit price book that is part of the initial bid package for a job order contract.

38.     The Gordian Group provides all of the relevant construction cost data needed to successfully execute a job order contracting program, including, but not limited to, labor, material and equipment costs in the "Construction Task Catalog."

39.     The Construction Task Catalog consists of thousands of pages of locally priced construction costs for labor, material and equipment costs, and has been published and distributed throughout the United States.

40.     The Gordian Group owns a trademark for "Construction Task Catalog," that was issued on the principal register on February 3, 2015.  *See* Trademark Registration, attached as Exhibit B.

41.     Prior to registration on the principal register, The Gordian Group owned a trademark registration for "Construction Task Catalog" on the supplemental register issued on December 9, 2003.

42.     The Gordian Group has been using the Construction Task Catalog in commerce since 1999.

43.     The Gordian Group has developed a highly valuable property interest in the Construction Task Catalog.

44.     The Gordian Group expended a considerable investment of time, reputation, effort, and resources in creating, developing, advertising, and otherwise promoting the Construction Task Catalog.

45.     As a result, The Gordian Group's Construction Task Catalog is widely recognized and exclusively associated by consumers, public agencies, and the construction, engineering and architectural trades as being a high quality product sourced from The Gordian Group.

46.     The Gordian Group continues to invest substantial sums in promoting and advertising the Construction Task Catalog.

47.     The Gordian Group, as the legal owner of the Construction Task Catalog trademark, is responsible for protecting its property interest from the infringing actions of others.

48.     In 2014, The Gordian Group acquired R.S. Means by purchasing all of the LLC's shares, and still runs the company as a subsidiary entity.

## C.     THIRD-PARTY DEFENDANTS GAIN ACCESS TO AND COPY R.S. MEANS' INTELLECTUAL PROPERTY

49.     Upon information and belief, Third-Party Defendant Stack worked at U.S. Cost from 1996 to 2012, performing tasks including software development for construction cost estimation using the proprietary construction cost data provided to U.S. Cost under a license agreement.

50.     Beginning in 2006, R.S. Means and U.S. Cost, a Software Reseller, executed a licensing agreement (the "Licensing Agreement"), whereby R.S. Means granted U.S. Cost a non-exclusive license to reproduce R.S. Means' construction cost data as part of U.S. Cost's construction cost estimating software.  The Licensing Agreement contained limitations around the access and use of the construction cost data provided to U.S. Cost, and provided that R.S. Means would provide data to U.S. Cost each year.  *See* 2006 Licensing Contract, attached as Exhibit C.

51.     Thereafter, upon information and belief, Stack, as an employee of U.S. Cost, gained access to the construction cost data delivered to U.S. Cost subject to the Licensing Agreement in 2008, and each year thereafter.

52.     Further, R.S. Means produced and delivered the 2008 File to the USACE pursuant to a contract which included a license to USACE to use the 2008 File for construction cost estimating, including incorporating the 2008 File into a third-party software platform for the purpose of enabling the USACE to perform construction cost estimating. The third-party software provider chosen by the USACE was U.S. Cost, and the USACE provided the 2008 File to U.S. Cost for incorporation into their software.

53.     Upon information and belief, Stack, as an employee of U.S. Cost, gained access to the 2008 File in connection with his employment.

54.     Upon information and belief, Stack misappropriated the construction and labor cost information, line item descriptions, and other information contained in the 2008 File.

**D.    THIRD-PARTY DEFENDANTS PUBLISH INFRINGING CONSTRUCTION COST CATALOGUE**

55.     Upon information and belief, Stack and Powell formed CCD in April of 2015.

56.     Upon information and belief, Stack and Powell directly copied product descriptions and other entire lines of data verbatim from the 2008 File in creating the Construction Cost Catalogue.

57.     In August 2015, CCD published the Construction Cost Catalogue, ISBN: 978-0-9966274-0-5, with editors Powell and Stack, and special consultants JOC Group and JOC Solutions.

58.     Powell is the registered agent for JOC Group's LLC filing.

59.    The Construction Cost Catalogue directs inquiries to be made to www.constructioncostdata.us.

60.    When attempting to access www.constructioncostdata.us, the user is automatically redirected to a website purportedly run by JOC Group, where on the front page, the JOC Group provides: "The primary unit price book (UPB) that we use is RS Means Cost Data books." *See* JOC Group's homepage, attached as Exhibit D.

61.    When clicking on the "Who We Are" section on the JOC Group's front page, the user is directed to Powell's biography. *See* JOC Group's Who Are We, attached as Exhibit E.

62.    In or around August 2015, the Gordian Entities discovered that Third-Party Defendants had copied R.S. Mean's 2008 File and were passing off R.S. Means's intellectual property as their own.

63.    The construction labor, equipment and material descriptions, task descriptions, and the compilation of the construction pricing information that were featured in Third-Party Defendants' Construction Cost Catalogue were identical, or substantially similar, to the 2008 File.

64.    Further, All Cost Data Info has published the same construction labor, equipment and material descriptions, task descriptions, and the compilation of construction pricing information that were featured in Third-Party Defendants' Construction Cost Catalogue on the website www.allcostdata.info.   The website is owned by All Cost Data Info, LLC, which is owned by Stack.

65.    The Construction Cost Catalogue was designed and organized in a way to mislead consumers into believing that it originated from the same source as both The Gordian Group's

Construction Task Catalog and R.S. Means' 2008 File (collectively, "Gordian's Intellectual Property").

66.    Third-Party Defendants' actions in designing, drafting, compiling, advertising, promoting, distributing, selling, and/or offering for sale goods bearing source-identifying indicia and design elements that are studied imitations of Gordian's Intellectual Property constitute violations of state and federal law.

67.    Third-Party Defendants' actions in marketing, selling and otherwise utilizing in commerce its infringing work caused harm to the Gordian Entities.

68.    If Third-Party Defendants are not prohibited from utilizing their infringing and stolen work, the Gordian Entities will be irreparably harmed, including, but not limited to, by the loss of prospective business opportunities.

69.    If Third-Party Defendants are not prohibited from utilizing their infringing and stolen work, the Gordian Entities will be irreparably harmed, including, but not limited to, by the dilution, and confusion, of their name, marks, and products in this area of commerce.

**E.    THIRD-PARTY DEFENDANTS CONTINUE TO INFRINGE UPON GORDIAN'S INTELLECTUAL PROPERTY**

70.    On September 1, 2015, Gordian Group and R.S. Means sent a cease and desist letter to CCD informing them that their actions referenced above constituted copyright infringement and trademark infringement and demanding that Third-Party Defendants cease and desist use of the Construction Cost Catalogue and all of R.S. Means' proprietary data; return all proprietary data of R.S. Means; remove all copies of the Construction Cost Catalogue from avenues of commerce; cease use of the title "Construction Cost Catalogue"; remove all of R.S. Means proprietary information from the website www.allcostdata.info; and confirm that All Cost Data Info, CCD, JOC Group, JOC Solutions, and all subsidiaries and affiliated companies, and

all individuals associated with these entities, will not use any of R.S. Means' construction cost data without the express written consent and license from R.S. Means.

71.    In September of 2015, Third-Party Defendants agreed to temporarily cease using the Construction Cost Catalogue and all of R.S. Means' proprietary data in commerce.

72.    On December 16, 2015, counsel for CCD notified the Gordian Entities' counsel that Third-Party Defendants intend to begin using the infringing Construction Cost Catalogue in commerce again.

73.    Third-Party Defendants continue to engage in designing, drafting, compiling, advertising, promoting, distributing, selling, and/or offering for sale the Construction Cost Catalogue, and continue operating the website www.allcostdata.info.

74.    Third-Party Defendants' piracy is blatant and willful.

75.    Third-Party Defendants are aware of the fame and strength of the Gordian Entities' brands, intellectual property, and the incalculable goodwill associated therewith.

76.    Third-Party Defendants have no license, authority, or other permission from R.S. Means or The Gordian Group to use any of Gordian's Intellectual Property in connection with the designing, drafting, compiling, advertising, promoting, distributing, selling, and/or offering for sale of the Construction Cost Catalogue, or in connection with the www.allcostdata.info website.

77.    Third-Party Defendants have been engaging in the above-described infringing and unauthorized activities knowingly and intentionally, or, at the very least, with reckless disregard or willful blindness to the Gordian Entities' rights, and in bad faith, for the purpose of trading on the goodwill and reputation of Gordian's Intellectual Property.

78.     Third-Party Defendants' activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Gordian Entities' well-known and well-established brands and the Construction Cost Catalogue and www.allcostdata.info.

79.     Upon information and belief, Third-Party Defendants will continue to design, draft, compile, advertise, promote, import, distribute, sell, and/or offer for sale the Construction Cost Catalogue, and continue to operate www.allcostdata.info, unless otherwise restrained.

80.     The Gordian Entities are suffering irreparable injury and substantial damages as a result of Third-Party Defendants' activities, and have no adequate remedy at law.

## V.
## CONDITIONS PRECEDENT

81.     All conditions precedent have been performed or have occurred.  FED. R. CIV. P. 9(c).

## VI.
## CAUSES OF ACTION

### COUNT ONE
### COPYRIGHT INFRINGEMENT
### IN VIOLATION OF THE COPYRIGHT ACT [17 U.S.C. § 501]
### (R.S. Means v. Third-Party Defendants)

82.     The allegations of the preceding paragraphs are incorporated herein by reference.

83.     R.S. Means' 2008 File contains original, decorative, creative, and artistic combinations that are protected under the United States Copyright Act (17 U.S.C. § 101 *et seq.*).

84.     R.S. Means has a copyright registration for the 2008 File with the U.S. Copyright Office.

85.     Third-Party Defendants had access to and copied the 2008 File in creating the Construction Cost Catalogue and www.allcostdata.info.

86.     Third-Party Defendants intentionally and willfully infringed R.S. Means' copyright.

87.     Specifically, Third-Party Defendants have, without R.S. Means' consent or authorization, copied, reproduced, and distributed to the public, works identical and/or substantially similar to the 2008 File including, but not limited to, the Construction Cost Catalogue and www.allcostdata.info, and/or produced and distributed unauthorized derivative works of the 2008 File, including, but not limited to, the Construction Cost Catalogue.

88.     Third-Party Defendants have infringed R.S. Means' copyright in violation of 17 U.S.C. § 501 *et seq.*

89.     Upon information and belief, Third-Party Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or in equity.

90.     Upon information and belief, Third-Party Defendants have continued and intend to continue their infringing acts, unless restrained by this Court.

91.     Indeed, upon information and belief, even after receipt of actual notice of infringement, Third-Party Defendants continue to engage in designing, drafting, compiling, advertising, promoting, distributing, selling, and/or offering for sale the Construction Cost Catalogue and continue to publish R.S. Means' copyrighted works on www.allcostdata.info, which constitutes willful infringement.

92.     Third-Party Defendants' acts have damaged and will continue to damage R.S. Means, and R.S. Means has no adequate remedy at law.

**COUNT TWO**
**REVERSE PASSING OFF AND UNFAIR COMPETITION**
**IN VIOLATION OF § 43(a) OF THE LANHAM ACT [15 U.S.C. § 1125(a)]**
**(R.S. Means v. Third-Party Defendants)**

93.     The allegations of the preceding paragraphs are incorporated herein by reference.

94.     Third-Party Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Construction Cost Catalogue and publishing of R.S. Means' copyrighted works on www.allcostdata.info, together with Third-Party Defendants use of other indicia associated with R.S. Means is intended, and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Construction Cost Catalogue and www.allcostdata.info.

95.     The foregoing acts of Third-Party Defendants are intended, and are likely, to cause such parties to believe that the construction labor, equipment and material descriptions, task descriptions, and the compilation of the construction pricing information, among other information, contained in the Construction Cost Catalogue and on www.allcostdata.info are the work or product of the Third-Party Defendants, when in fact, the Third-Party Defendants have falsely designated R.S. Means' intellectual property as its own goods.

96.     The foregoing acts of Third-Party Defendants constitute false designation of origin, and reverse passing off, all in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

97.     Upon information and belief, Third-Party Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

98.     Upon information and belief, Third-Party Defendants intend to continue their infringing acts, unless restrained by this Court.

99.     Third-Party Defendants' acts have damaged and will continue to damage R.S. Means, and R.S. Means has no adequate remedy at law.

## COUNT THREE
## TRADEMARK INFRINGEMENT
## IN VIOLATION OF § 32 OF THE LANHAM ACT [15 U.S.C. § 1114(1)(a)]
### (The Gordian Group v. CCD, JOC Group, JOC Solutions, Stack, and Powell)

100.    The allegations of the preceding paragraphs are incorporated herein by reference.

101.    The "Construction Task Catalog" is a valid, protectable federally registered trademark that has acquired secondary meaning among consumers.

102.    The Gordian Group owns "Construction Task Catalog" as a trademark.

103.    Third-Party Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Construction Cost Catalogue, together with Third-Party Defendants use of other indicia associated with The Gordian Group is intended, and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Construction Cost Catalogue.

104.    The foregoing acts of Third-Party Defendants are intended, and are likely, to cause such parties to believe that the Construction Cost Catalogue has been authorized, sponsored, approved, endorsed, or licensed by The Gordian Group, or that Third-Party Defendants are in some way affiliated with Gordian Group, where in fact there is no such affiliation, connection, association, or authorization.

105.    The foregoing acts of Third-Party Defendants constitute false designation of origin, and create a likelihood of confusion, all in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)-(b)).

106.    Upon information and belief, Third-Party Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

107.    Upon information and belief, Third-Party Defendants intend to continue their infringing acts, unless restrained by this Court.

108.    Third-Party Defendants' acts have damaged and will continue to damage The Gordian Group, and The Gordian Group has no adequate remedy at law.

**COUNT FOUR**
**COMMON LAW UNFAIR COMPETITION**
**(The Gordian Group and R.S. Means v. Third-Party Defendants)**

109.    The allegations of the preceding paragraphs are incorporated herein by reference.

110.    The foregoing acts of Third-Party Defendants permit Third-Party Defendants to use and benefit from the goodwill and reputation earned by the Gordian Entities and to obtain a ready customer acceptance of Third-Party Defendants' goods, and constitute unfair competition, palming off, and misappropriation in violation of Texas common law, for which the Gordian Entities are entitled to recover any and all remedies provided by such common law.

111.    Upon information and belief, Third-Party Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

112.    Upon information and belief, Third-Party Defendants intend to continue their infringing acts, unless restrained by this Court.

113.    Defendants' acts have damaged and will continue to damage the Gordian Entities, and the Gordian Entities have no adequate remedy at law.

**COUNT FIVE**
**COMMON LAW UNJUST ENRICHMENT**
**(The Gordian Group and R.S. Means v. Third-Party Defendants)**

114.    The allegations of the preceding paragraphs are incorporated herein by reference.

115.    By reason of the foregoing, Third-Party Defendants have unjustly enriched themselves, and continue to do so.

116.    The Gordian Entities are entitled to just compensation under the common law of the state of Texas.

## VII.
## APPLICATION FOR INJUNCTIVE RELIEF

117.     The allegations of the preceding paragraphs are incorporated herein by reference.

118.     Third-Party Defendants violated 17 U.S.C. § 501, 15 U.S.C. § 1114, and 15 U.S.C. § 1125, and the Gordian Entities are therefore entitled to injunctive relief under 17 U.S.C. § 502 and 15 U.S.C. § 1116.

119.     The Gordian Entities are further entitled to injunctive relief under traditional equitable principles of federal and state law.

120.     The Gordian Entities request that the Court issue permanent injunctive relief enjoining Third-Party Defendants and their officers, directors, principals, agents, servants, employees, successors, assigns, and attorneys, and all those in concert or participation with them from directly or indirectly:

    (a)    engaging in any acts or activities directly or indirectly calculated to trade upon Gordian's Intellectual Property, reputation, or goodwill, including any further use of the Construction Cost Catalogue or any other products that are identical to or confusingly or substantially similar to Gordian's Intellectual Property;

    (b)    using in any manner, including on any website owned and operated by or otherwise associated with Third-Party Defendants, the Construction Cost Catalogue, or any other designation that is confusingly similar to Gordian's Intellectual Property, in connection with the advertising or offering for sale.

    (c)    simulating, reproducing, imitating, copying, making unauthorized use of, distributing, or selling Gordian's Intellectual Property or any other trademarks or designs that are identical to or confusingly or substantially similar to Gordian's Intellectual Property, including, but not limited to, the Construction Cost Catalogue and www.allcostdata.info;

    (d)    committing any acts calculated to cause consumers to believe that Third-Party Defendants' goods are those sold under the control and supervision of the Gordian Entities, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of the Gordian Entities;

(e)    further infringing Gordian's Intellectual Property and damaging the Gordian Entities' goodwill; and

(f)    otherwise competing unfairly with the Gordian Entities in any manner.

121.    The Gordian Entities will suffer immediate and irreparable damage, injury, and harm for which there is no adequate remedy at law if Third-Party Defendants are not permanently enjoined from the conduct listed above.

122.    Public policy favors the protection of trademark rights and copyrights and the prevention of unfair competition and unjust enrichment, and any injunctive relief granted herein will therefore be in accordance with public policy.

123.    The potential damage to the Gordian Entities if the injunctive relief requested herein is not granted far outweighs any harm that Third-Party Defendants will suffer as a result of the injunctive relief requested.  Permanent injunctive relief is therefore appropriate.

## VIII.
## JURY DEMAND

124.    Defendants/Third-Party Plaintiffs The Gordian Group and R.S. Means hereby respectfully request and demand trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable law.

## IX.
## REQUEST FOR RELIEF

WHEREFORE, Third-Party Plaintiffs The Gordian Group and R.S. Means respectfully request that judgment be entered in their favor and against Third-Party Defendants, granting to Third-Party Plaintiffs the relief as follows:

(a)    Finding that: (i) Third-Party Defendants have violated Section 501 of the United States Copyright Act (17 U.S.C. § 501); (ii) Third-Party Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125); (iii) Third-Party Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); (iv) Third-Party Defendants have

engaged in unfair competition, including, but not limited to, violations of "palming off" and misappropriation under the common law of Texas; and (v) Third-Party Defendants have been unjustly enriched in violation of Texas common law;

(b)    Granting an injunction permanently restraining and enjoining Third-Party Defendants, their officers, directors, principals, agents, servants, employees, successors, assigns, and attorneys, and all those in concert or participation with them from directly or indirectly:

(1)    engaging in any acts or activities directly or indirectly calculated to trade upon Gordian's Intellectual Property, reputation, or goodwill, including any further use of the Construction Cost Catalogue or www.allcostdata.info or any other products that are identical to or confusingly or substantially similar to Gordian's Intellectual Property;

(2)    using in any manner, including on any website owned and operated by or otherwise associated with Third-Party Defendants, Gordian's Intellectual Property, or any other designation that is identical to or confusingly or substantially similar to Gordian's Intellectual Property, in connection with the advertising or offering for sale or selling the Construction Cost Catalogue or any similar goods covered by Gordian's Intellectual Property;

(3)    simulating, reproducing, imitating, copying, making unauthorized use of, distributing, or selling Gordian's Intellectual Property or any other trademark or designs that are identical to or confusingly or substantially similar to Gordian's Intellectual Property, including, but not limited to, the Construction Cost Catalogue;

(4)    committing any acts calculated to cause purchasers to believe that Third-Party Defendants' goods are those sold under the control and supervision of the Gordian Entities, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of the Gordian Entities;

(5)    further infringing Gordian's Intellectual Property, and damaging the Gordian Entities' goodwill; and

(6)    otherwise competing unfairly with the Gordian Entities in any manner.

(c)    Requiring Third-Party Defendants to recall from any distributors and retailers and to deliver to the Gordian Entities for destruction or other disposition all remaining inventory of the Construction Cost Catalogue, including all advertisements, promotional, and marketing materials therefore, as well as means of making same;

(d)     Requiring Third-Party Defendants to file with this Court and serve on the Gordian Entities within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Third-Party Defendants have complied with the injunction;

(e)     Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any goods at issue in this action that have been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Third-Party Defendants, has been authorized by the Gordian Entities, or is related in any way with the Gordian Entities;

(f)     Awarding the Gordian Entities their actual damages suffered as a result of the copyright infringement;

(g)     Ordering Third-Party Defendants to account to and pay to the Gordian Entities any and all profits realized by their wrongful acts, including, but not limited to, from any and all sales of the Construction Cost Catalogue;

(h)     Awarding the Gordian Entities treble damages against Third-Party Defendants related to Third-Party Defendants willful infringement of Gordian's intellectual property;

(i)     Awarding the Gordian Entities actual and punitive damages to which it is entitled under applicable state laws;

(j)     Awarding the Gordian Entities their costs, attorneys' fees, investigatory fees, and expenses to the full extent allowed by law, including, but not limited to, relief provided by Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

(k)     The Gordian Entities are entitled to an award of attorney's fees and costs under state and federal law, including, 15 U.S.C. § 1117(a);

(l)     Awarding the Gordian Entities pre-judgment interest and post-judgment interest on any monetary award made part of the judgment against Third-Party Defendants; and

(m)    Awarding the Gordian Entities such additional and further relief as the Court deems just and proper.

Respectfully submitted:


By: _____
     John D.S. Gilmour
     TX Bar No. 24012700
     S.D. Tex. No. 29708
     Jackson Gilmour & Dobbs, PC
     3900 Essex, Suite 700
     Houston, TX  77027
     (713) 355-5005 (Direct)
     (713) 355-5001 (Fax)
     E-mail:  jgilmour@jgdpc.com

Attorney-in-Charge for Defendants
The Gordian Group, Inc. and
R.S. Means Company, LLC

Of-Counsel:
Jeffrey A. Cohen
S.D. Tex. Bar No. - *Pro Hac Vice* Pending
FLASTER/GREENBERG, P.C.
1800 Chapel Avenue West
Cherry Hill, NJ  08002
(856) 661-1900 (Direct)
(856) 661-1919 (Fax)
E-mail:  jeff.cohen@flastergreenberg.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2016 a true and correct copy of this THE GORDIAN GROUP, INC. AND R.S. MEANS COMPANY, LLC'S ANSWER TO PLAINTIFFS' COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, THIRD-PARTY COMPLAINT AND DEMAND FOR JURY TRIAL was sent to the following counsel of record as indicated:

Via Electronic Service
James A. Collura, Jr.
Teia Moore Kelly
Coats | Rose
9 Greenway Plaza, Suite 1100
Houston, TX  77046
jcollura@coatsrose.com
tkelly@coatsrose.com

John D.S. Gilmour