IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONSTRUCTION COST DATA, LLC, <br> JOB ORDER CONTRACTING <br> GROUP, LLC, and MANAGED <br> JOC SOLUTIONS, LLC, <br><br> Plaintiffs, Counterclaim <br> Defendants, <br><br> v. <br><br> THE GORDIAN GROUP, INC. AND <br> R.S. MEANS COMPANY, LLC <br><br> Defendants, Counterclaim <br> Plaintiffs, <br><br> v. <br><br> BENJAMIN STACK, <br> AND MARK POWELL, <br><br> New Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Cause No. 4:16-cv-00114 |

## DEFENDANTS THE GORDIAN GROUP, INC. AND R.S. MEANS COMPANY, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT IN ITS ENTIRETY

TO THE HONORABLE UNITED STATES DISTRICT COURT.

COME NOW, Defendants The Gordian Group, Inc. ("The Gordian Group") and R.S. Means Company, LLC ("R.S. Means") (collectively, "The Gordian Entities" or "Defendants"), through their attorneys, and hereby file this Motion to Dismiss Plaintiffs Construction Cost Data, LLC, ("CCD"), Job Order Contracting Group, LLC ("JOC Group"), and Managed JOC Solutions, LLC's ("MJS") First Amended Complaint in its entirety, and would respectfully show the Court as follows:

## I. INTRODUCTION

Plaintiffs' First Amended Complaint should be dismissed in its entirety because of two fatal defects: (1) Plaintiffs' tortious interference claims, as pled, rely solely on Defendants' pre-litigation conduct as the only source of factual support; however, that conduct is all immunized under the *Noerr-Pennington* Doctrine and cannot be the basis for these claims; and (2) Defendants have attached evidence to this motion demonstrating that there are multiple competitors in Texas selling commercially available construction cost pricing information, which could be used by any company offering JOC services, and accordingly, Plaintiffs cannot allege a viable claim of monopolization or attempted monopolization. As a result of these two fatal defects, the Court should dismiss all six of Plaintiffs' claims pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE.

## II. PROCEDURAL POSTURE AND STATEMENT OF FACTS

Plaintiffs filed their Original Petition in the District Court of Harris County, Texas, approximately ten months ago, on December 1, 2015, in a transparent attempt to deter the Gordian Entities from their right to protect the Gordian Entities' intellectual property and proprietary information. Defendants subsequently removed the matter to the Southern District of Texas, Houston Division, on January 15, 2016. [ECF No. 1.] The Original Petition alleged claims of tortious interference with contracts and commercial relationships against the Defendants. On February 12, 2016, Defendants filed their Counterclaims against Plaintiffs and the Third-Party Complaint against Benjamin Stack ("Stack"), All Cost Data Info, LLC ("All Cost"), and Mark Powell ("Powell"). [ECF No. 7.] Following motion practice centered around technical and procedural issues, Defendants filed the Second Amended Counterclaims and Complaint Against Counter-Defendants on April 29, 2016. Defendants assert claims of

copyright infringement, trademark infringement, unfair competition, and unjust enrichment. [ECF No. 29.] All Cost and Stack moved to dismiss Defendants' Complaint [ECF No. 35], and the Court denied their motion as to Stack and granted it as to All Cost; the latter was dismissed as a Counter-Defendant. [ECF No. 44.]

Now, on September 27, 2016, approximately ten months after filing their Original Petition, Plaintiffs filed their First Amended Complaint against Defendants. [ECF No. 48.] Plaintiff's First Amended Complaint contains brand new theories and now alleges claims of: (A) Monopolization: Violation of Texas Antitrust Act; (B) Attempted Monopolization: Violation of Texas Antitrust Act; (C) Tortious Interference with Existing Contract; (D) Tortious Interference with Commercial Relationship; (E) Conspiracy to Interfere with Contract; and (F) Business Disparagement. Claims A and B hereinafter will be referred to as the "Monopolization Claims." Claims C through F hereinafter will be referred to as the "Business Tort Claims."

A.  **Plaintiffs' Business Tort Claims.**

Plaintiffs allege the following with respect to their theory of tortious interference and business disparagement. After learning that The Cooperative Purchasing Network ("TCPN") would allow contractors to submit bids to a Request for Proposal Solicitation Number 15-17 ("RFP") using Plaintiff's Construction Cost Catalogue, the Gordian Entities sent a cease-and-desist letter to Plaintiffs, Mark Powell ("Powell") and Stack on September 1, 2015. (First Amended Complaint ("FAC") at ¶¶ 24-25.) The Gordian Entities' letter states that the Construction Cost Catalogue was a misuse of Defendants' proprietary information, as well as an infringement of Defendants' copyrights and trademarks. (*Id.* at ¶ 25.)

The Gordian Entities examined the data in the Construction Cost Catalogue alongside R.S. Means copyrighted 2008 Data Compilation File ("2008 File") and determined that a cease-

3

and-desist letter to Plaintiffs was necessary to protect the Gordian Entities' intellectual property and proprietary information. (Declaration of Scott Smith ("Smith Decl.") at ¶ 5, *see also* Cease-and-Desist Letter to Plaintiffs, attached thereto as Exhibit A.) The Gordian Entities discovered that there were more than one hundred product descriptions in the Construction Cost Catalogue that were copied verbatim from the 2008 File. (*Id.* at ¶ 6.) In addition, there were tens of thousands of lines of data in the Construction Cost Catalogue of construction labor and material costs, estimates, product descriptions, and related pricing information that were substantially similar to those featured in the 2008 File. (*Id.* at ¶ 7.) Plaintiffs' Construction Cost Catalogue was also being used in commerce in the same region and market (including Houston, Texas) as The Gordian Group's Construction Task Catalog in connection with the same goods and services. (*Id.* at ¶ 8.)

Thereafter, the Gordian Entities also sent a cease-and-desist letter to TCPN on September 3, 2015, advising them that Plaintiffs, Powell, Stack, and All Cost were improperly using the Gordian Entities' proprietary information and intellectual property in Plaintiffs' Construction Cost Catalogue. (*Id.* at ¶ 9; *see also* Cease-and-Desist Letter to TCPN, attached thereto as Exhibit B. Plaintiffs allege that The Gordian Entities demanded that TCPN remove the Construction Cost Catalogue from TCPN's bid process and/or extend the deadline for contractors to submit bids while the Gordian Entities attempted to resolve the dispute with Plaintiffs. (FAC ¶ 27.)

Plaintiffs also allege that the Gordian Entities threatened legal action against 4Clicks Solutions, LLC ("4Clicks") by "publically criticizing Plaintiffs by alleging that Plaintiffs did not have ownership rights to the material in the CCD catalogue." (FAC ¶ 26.) However, in reality,

the Gordian Entities never threatened legal action against 4Clicks, and Plaintiffs' allegations are false. (Smith Decl. at ¶ 10.)

Plaintiffs allege that 4Clicks terminated its agreement with CCD on October 14, 2015 due to CCD's inability to remove the "cloud of legal uncertainty" surrounding the Construction Cost Catalogue. (FAC at ¶ 31.) Plaintiffs allege that, around the same time, KATA Management, LLC ("KATA") terminated its independent contractor agreement with the JOC Group due to similar reasons. (*Id.* at ¶ 32.) In fact, the Gordian Entities did not communicate with KATA regarding the Plaintiffs, or the Construction Cost Catalogue, and accordingly, did not threaten legal action against KATA. (Smith Decl. at ¶ 11.) On February 3, 2016, TCPN terminated its business relationship with the JOC Group, wherein the JOC Group provided estimating services on JOC projects for TCPN. (FAC at ¶ 33.)

### B. **Plaintiffs' Monopolization Claims.**

Plaintiffs allege the following with respect to their meritless theory that Defendants have either monopolized or attempted to monopolize the Texas JOC UPB market. According to Plaintiffs, prior to 2014, vendors such as TCPN allegedly only had two choices for commercial JOC UPBs in Texas – R.S. Means' UPB or The Gordian Group's UPB. (FAC at ¶ 35.) After The Gordian Group acquired R.S. Means in 2014, Plaintiffs allege that the Gordian Entities "literally controlled 100% of the market for JOC UPBs . . . both nationally [] and here in Texas." (*Id.* at ¶ 36.)

Plaintiffs' allegations are unsupported and not based on facts. The Gordian Entities do not possess a monopoly or unlawful control of the market for commercially available construction cost data and pricing information in the Texas market (or any market). (Smith Decl. ¶ 12.) The following competitors of the Gordian Entities have construction cost data

5

commercially available in Texas: Craftsman, Richardson Construction, BNi Building News, Compass International, Design Cost Data, Marshall & Swift, Whitestone, Xactimate, Corelogic, HomeTech, and Prio Soft. (*Id.* at ¶ 13.) Plaintiffs have resorted to pleading baseless legal conclusions, such as: "Defendants huffed and puffed and exercised their monopoly power and control of the market to prevent Plaintiffs from entering by making false allegations about ownership rights and sending demand letters to Plaintiffs' customers." (FAC at ¶ 37.) However, such unsupported legal conclusions are insufficient to maintain a claim. Plaintiffs wholly have failed to allege factual allegations to support their claims of monopolization.

Plaintiffs may not rely on the immunized pre-suit cease-and-desist correspondence to prove their Business Tort Claims or their Monopolization Claims, and they may not rely on unsupported and baseless legal conclusions, either. Accordingly, the Court should dismiss all six of Plaintiffs' claims pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE.

## III.   LEGAL ARGUMENT

### A.   **Standard of Review.**

A district court must dismiss a cause of action that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). It is not enough that a party offers legal conclusions or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a party must plead facts that would be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The plausibility standard requires "more than a sheer possibility that a [party] has acted unlawfully." *Iqbal*, 556 U.S. at 678. As part of the *Twombly-Iqbal* analysis, a court proceeds in

a two-step analysis: (1) the court separates legal conclusions from well-pled facts; and (2) the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Gregory v. Houston Indep. Sch. Dist.*, No. CV H-14-2768, 2016 WL 5661701, at *2 (S.D. Tex. Sept. 30, 2016) (citing *Iqbal*, 556 U.S. at 678-79). Accordingly, when a party fails to plead a claim for relief that is plausible on its face, the cause of action must be dismissed.

    **B.    The Court Should Dismiss Plaintiffs' Business Tort Claims for Failure to State a Claim upon which Relief Can Be Granted Because the Gordian Entities' Pre-Suit Litigation Correspondence is Immunized Pursuant to the *Noerr-Pennington* Doctrine.**

        1.    The *Noerr-Pennington* Doctrine.

Defendants' pre-litigation correspondence with Plaintiffs and TCPN is immunized under the *Noerr-Pennington* doctrine, and accordingly, Plaintiffs' Business Tort Claims are impermissible. *See Source Network Sales & Mktg., LLC v. Ningbo Desa Elec. Mfg. Co.*, No. 3:14-CV-1108-G, 2015 WL 2341063, at *7 (N.D. Tex. May 15, 2015); *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). Pursuant to the doctrine, a party's judicial activity is immunized from liability even if the activity eliminates competition, unless the activity is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144.

The Supreme Court of the United States outlined a two-part definition of what constitutes "sham" litigation: (1) objectively baseless litigation; and (2) the litigant's subjective intent to interfere. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). First, a court examines whether the litigation activity is "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." *Id.* Only if the court finds that the litigation activity is objectively baseless, may the court continue to examine

7

subjective intent. *Id.* If either element is not met, the litigation activity is not a "sham" and is immunized under the *Noerr-Pennington* doctrine. *Id.*

"Although the *Noerr–Pennington* doctrine initially arose in the antitrust field, [it now also] protect[s] first amendment petitioning of the government from claims brought under federal and state laws . . ." such as trademark and copyright owners' desires to protect their intellectual property rights. *Source Network Sales & Mktg., LLC*, 2015 WL 2341063, at *7 (quoting *Video International Production, Inc. v. Warner–Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir.1988)).

The Fifth Circuit has expressly held that the *Noerr-Pennington* doctrine "extends to threats to litigate, such as cease-and-desist letters, even though such actions do not entail petitioning the government." *Id.* at *8 (citing *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir.1983)). In *Coastal States*, the Fifth Circuit reasoned:

> Given that petitioning immunity protects joint litigation, it would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation. The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute. This is the position taken by most of the courts that have considered the question.

*Id.* at 1367. In other words, if *Noerr-Pennington* immunity did not extend to pre-suit cease-and-desist letters, it would encourage parties to run to the courts and file a lawsuit (which would be protected activity under the doctrine) rather than engage in civil, pre-suit discussions to potentially resolve matters because a party could be sued for tortious interference by engaging in such amicable discussions. This result would be antithetical to the public interest and matters of judicial economy.

Additionally, it logically follows that *Noerr-Pennington* protection would cover pre-suit cease-and-desist letters and notices in the context of trademark infringement because trademark owners may be "barred from recovering profits or damages if they do not notify the infringing party of the alleged infringement prior to filing their complaint." *Sweet St. Deserts, Inc. v. Chudleigh's Ltd.*, No. CIV.A. 12-3363, 2013 WL 1389760, at *6 (E.D. Pa. Apr. 4, 2013). Thus, a party who sends pre-suit cease-and-desist correspondence, such as the Gordian Entities in this case, cannot be held liable so long as the correspondence was not a mere "sham" as outlined in the Supreme Court's two-part test.

> 2. The Gordian Entities' Pre-Suit Cease-and-Desist Correspondence Was Objectively Reasonable and There is No Evidence to Establish a Subjective Intent to Harm Plaintiffs' Business Relationships.

The Court should dismiss Plaintiffs' Business Tort Claims for failure to state a claim upon which relief can be granted because all four claims are based on pre-suit litigation correspondence which is immunized pursuant to the *Noerr-Pennington* Doctrine. Courts have dismissed actions at the pleading stage pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE when *Noerr-Pennington* immunity is evident after examining the pleadings. *See Love Terminal Partners, L.P. v. City of Dallas, Texas*, 527 F. Supp. 2d 538, 550 (N.D. Tex. 2007) (finding that a court may dismiss an action under Rule 12(b)(6) if "it is apparent from the face of plaintiffs' complaint that defendants are entitled to *Noerr–Pennington* immunity").

The factual allegations to support Plaintiffs' Business Tort Claims stem from the Gordian Entities' September 1, 2015 cease-and-desist letter to Plaintiffs and the Gordian Entities' September 3, 2015 cease-and-desist letter to TCPN. (*See* Smith Decl. at Exhibits A-B.) The Gordian Entities' pre-suit demand letters are immunized from liability, even if they are designed to eliminate competition, so long as they are not a mere "sham" designed to interfere with

9

business relationships of a competitor. *Noerr*, 365 U.S. at 144. In order to constitute a "sham," the letters must be objectively baseless and reveal a subjective intent by the Gordian Entities to interfere with Plaintiffs' business relationships.

To meet the "objectively baseless" standard requires that no reasonable litigant could expect success on the merits of its allegations, which in this context, requires an examination of the contents of the cease-and-desist letters. *See Prof'l Real Estate Investors, Inc.*, 508 U.S. at 60. The Gordian Entities sent the cease-and-desist letter to Plaintiffs, Powell, and Stack after examining thousands of lines of data in the Construction Cost Catalogue alongside R.S. Means' 2008 File. (Smith Decl. ¶ 5.) In fact, there were over one hundred product descriptions in the Construction Cost Catalogue that were copied verbatim from the 2008 File. (*Id.* at ¶ 6.) There were also tens of thousands of lines of data in the Construction Cost Catalogue of construction labor and material costs, estimates, product descriptions, and related pricing information that were substantially similar to those featured in the 2008 File. (*Id.* at ¶ 7.) In addition, Plaintiffs' Construction Cost Catalogue was being used in commerce in the Texas market alongside The Gordian Group's Construction Task Catalog in connection with the same goods and services. (*Id.* at ¶ 8.) Accordingly, the Gordian Entities were reasonably concerned that Plaintiffs had stolen their proprietary information and subsequently infringed the Gordian Entities' copyrights and trademarks.

Thereafter, the Gordian Entities also sent a cease-and-desist letter to TCPN on September 3, 2015, advising it that it was the Gordian Entities' position that Plaintiffs, Powell, and Stack were improperly using the Gordian Entities' proprietary information and intellectual property in Plaintiffs' Construction Cost Catalogue – putting TCPN on notice of its potential liability if it

10

proceeded with infringing the Gordian Entities' copyrights and trademarks in commerce. (*Id.* at ¶ 9.)

The Gordian Entities believed that their proprietary information (the 2008 File) and intellectual property (the copyrighted work within the file and the CONSTRUCTION TASK CATALOG trademark) were being violated by a competitor in the same marketplace. The Gordian Entities' conduct was not only objectively reasonable but mandatory in order to protect their intellectual property rights. *See Sweet St. Deserts, Inc.* 2013 WL 1389760, at \*6 (E.D. Pa. Apr. 4, 2013) (trademark owners may be "barred from recovering profits or damages if they do not notify the infringing party of the alleged infringement prior to filing their complaint").

Because Plaintiffs cannot meet the heavy burden of establishing that the cease-and-desist correspondence was objectively baseless, the Court need not examine the subjective intent component of the doctrine. *See Prof'l Real Estate Investors, Inc.*, 508 U.S. at 60. However, even assuming, *arguendo*, that Plaintiffs have pled sufficient allegations to establish that the correspondence was objectively baseless (which they have not), Plaintiffs' allegations cannot establish that the Gordian Entities' subjective intent in sending the letters was to interfere with business opportunities. First, Plaintiffs' allegation that the Gordian Entities began "publically criticizing Plaintiffs" to 4Clicks, TCPN, and KATA is factually wrong because the Gordian Entities did not do that. (*See* Smith Decl. at ¶¶ 11-12.) Rather, the Gordian Entities sent a constitutionally-protected cease-and-desist letter to TCPN, the Gordian Entities did not threaten legal action against 4Clicks, and the Gordian Entities did not communicate with KATA. (*Id.*) Second, Plaintiffs have not alleged any facts to support any actual claim of interference. Instead, Plaintiffs point to a conclusory result and hope that the Court will infer that the Gordian Entities are to blame. On the contrary, TCPN, 4Clicks, and KATA all made business decisions unrelated

11

to this dispute or to avoid potential exposure for liability by not transacting with a party who may have infringed a competitors' proprietary information and intellectual property rights.

The *Noerr-Pennington* Doctrine immunizes the Gordian Entities' pre-suit cease-and-desist correspondence. The Court should dismiss Plaintiffs' Business Tort Claims pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE because those claims are entirely dependent on this immunized activity for factual support.

  C. **The Court Should Dismiss Plaintiffs' Monopolization Claims for Failure to State a Claim upon which Relief Can Be Granted Because There is Evidence of Competition in the Relevant Texas Market Which Refutes Plaintiffs' Conclusory Allegations.**

The Court should dismiss Plaintiffs' Monopolization Claims for failure to state a claim upon which relief can be granted because Plaintiffs cannot rely on the Gordian Entities' pre-litigation correspondence which is immunized by the *Noerr-Pennington* Doctrine, and the Gordian Entities have established that they do not have a monopoly for JOC UPB pricing in Texas.

To establish a claim for attempted monopolization under section 15.05(b) of the TEXAS BUSINESS AND COMMERCE CODE, Plaintiffs must demonstrate: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Star Tobacco Inc. v. Darilek*, 298 F. Supp. 2d 436, 447 (E.D. Tex. 2003) (quoting *Spectrum Sports, Inc., v. McQuillan,* 506 U.S. 447, 456 (1993)). Plaintiffs' First Amended Complaint cannot establish any of the three required elements for the Monopolization Claims.

As set forth above, Plaintiffs' First Amended Complaint relies on the Gordian Entities' pre-litigation conduct to try to establish predatory or anticompetitive conduct. Since the Court must dismiss these allegations pursuant to the *Noerr-Pennington* doctrine, these allegations also

must not be considered in support of the Monopolization Claims. Once these allegations are removed, Plaintiffs' First Amended Complaint is left only with wildly speculative assertions and legal conclusions that are not supported by any factual allegations, such as:

- "Defendants huffed and puffed and exercised their monopoly power and control of the market to prevent Plaintiffs from entering . . . ." (FAC at ¶ 37.)

- "As Defendants' UPB is currently the only available option on the market, contractors are now forced to use not only Defendants' UPB but also their JOC management program. This subjects contractors to pay whatever price Defendants determine in order to participate in JOC projects." (*Id.* at ¶ 38.)

- "Defendants possess dominant market power and monopolies in the markets for JOC UPBs in a substantial number of markets, including in the Texas market." (*Id.* at ¶ 40.)

- "Defendants have insulated themselves from competition with TCPN for JOC UPBs and JOC contractors, and have willfully maintained or expanded their dominant market power and monopolies in the JOC UPB markets, including in the Texas market." (*Id.* at ¶ 42.)

The Court should not consider these conclusory allegations in evaluating a motion to dismiss, and accordingly, Plaintiffs' First Amended Complaint is devoid of any factual allegations to establish the Gordian Entities' "specific intent to monopolize" or "a dangerous probability of achieving monopoly power." Even if one were to ignore the *Noerr-Pennington* immunity under which the Gordian Entities operated, there is no evidence, let alone any appropriately and specifically detailed facts pled in the First Amended Complaint, to allow Plaintiffs to proceed with such claims.

Finally, and directly rebutting Plaintiffs' conclusory allegations regarding an alleged monopoly, the Gordian Entities have established that the following companies competitively offer commercially available construction cost data in Texas: Craftsman, Richardson Construction, BNi Building News, Compass International, Design Cost Data, Marshall & Swift, Whitestone, Xactimate, Corelogic, HomeTech, and Prio Soft. (Smith Decl. ¶ 13.) While the

Gordian Entities strongly believe that a customized unit price book, developed and published specifically for JOC, is the most effective means for facilitating a JOC program, the commercially available construction cost data from the aforementioned companies could be used as the basis for pricing and awarding JOC contracts. Quite simply, the Gordian Entities do not possess a monopoly or unlawful control of the market for commercially available construction cost data and pricing information in the Texas market (or any market). (*Id.* at ¶ 12.) Because the Gordian Entities do not possess a monopoly or unlawful control of the Texas market for commercially available construction cost data, Plaintiffs similarly are unable to prove monopolization. *See Caller-Times Pub. Co. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576, 580 (Tex. 1992) (holding that monopolization requires (1) possession of monopoly power in a relevant market and (2) willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident). Therefore, the Gordian Entities have successfully rebutted Plaintiffs' bald assertion that the Gordian Entities have created or attempted to create a monopoly in Texas.

The Court should dismiss Plaintiffs' Monopolization Claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs have failed to plead sufficient allegations in support of such claims and further because such conclusions have been rebutted.

## V.  CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiffs' First Amended Complaint in its Entirety, dismiss Plaintiffs' First Amended Complaint in its entirety, and for such further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted:

By: _____
John D.S. Gilmour
TX Bar No. 24012700
S.D. Tex. No. 29708
Jackson Gilmour & Dobbs, PC
3900 Essex, Suite 700
Houston, TX 77027
(713) 355-5005 (Direct)
(713) 355-5001 (Fax)
E-mail: jgilmour@jgdpc.com

Attorney-in-Charge for Defendants
The Gordian Group, Inc. and
R.S. Means Company, LLC

Of-Counsel:
Eric Clendening
S.D. Tex. Bar No. - *Pro Hac Vice* Admitted
Jeffrey A. Cohen
S.D. Tex. Bar No. - *Pro Hac Vice* Admitted
FLASTER/GREENBERG, P.C.
1800 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900
(856) 661-1919 (Fax)
E-mail: eric.clendening@flastergreenberg.com
         jeff.cohen@flastergreenberg.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2016, I served a true and correct copy of DEFENDANTS THE GORDIAN GROUP, INC. AND R.S. MEANS COMPANY, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT IN ITS ENTIRETY to the following counsel of record as indicated:

Via email:
Pete Thomas Patterson
Patterson PC
4309 Yoakum Blvd., Suite 2000
Houston, TX 77006
pete@pyllp.com

Via email:
John Hooshik Kim
The Kim Law Firm
4309 Yoakum Blvd., Suite 2000
Houston, TX 77006
jhk@thekimlawfirm.com

Via email:
Teia Moore Kelly
Coats Rose
9 Greenway Plaza, Suite 1100
Houston, TX 77046
tkelly@coatsrose.com

John D.S. Gilmour