**EXHIBIT C**

**Proposed Joint Jury Instructions**

**For:**

**Plaintiffs/Counterclaim Defendants, Construction Cost Data, LLC, Job Order Contract Group, LLC, and Managed JOC Solutions, LLC, and  Counterclaim Defendants, Mark Powell and Benjamin Stack**

**AND**

**Defendants/Counterclaim Plaintiffs,
The Gordian Group, Inc. and R.S. Means Company, LLC**

| | |
|---|---|
| **Black Ink:** | **Agreed** |
| **Red Ink:** | **Proposed By:** |
| | **Plaintiffs/Counterclaim Defendants, Construction Cost Data, LLC, Job Order Contract Group, LLC, and Managed JOC Solutions, LLC, and  Counterclaim Defendants, Mark Powell and Benjamin Stack** |
| **Blue Ink:** | **Proposed By:** |
| | **Defendants/Counterclaim Plaintiffs, The Gordian Group, Inc. and R.S. Means Company, LLC** |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CONSTRUCTION COST DATA, LLC,** | § | |
| **JOB ORDER CONTRACTING GROUP,** | § | |
| **LLC, AND MANAGED JOC** | § | |
| **SOLUTIONS, LLC** | § | |
| | § | |
| *the CCD Group, Counterclaim the* | § | |
| *Gordian Group* | | |
| | § | |
| **v.** | § | **C.A. 4:16-cv-00114** |
| | § | |
| **THE GORDIAN GROUP, INC. AND R.S.** | § | |
| **MEANS COMPANY LLC** | § | |
| | § | |
| *the Gordian Group, Counterclaim the* | § | |
| *CCD Group* | | |
| | § | **JURY DEMANDED** |
| **v.** | § | |
| | § | |
| **ALL COST DATA INFO, LLC,** | § | |
| **BENJAMIN STACK, AND MARK** | § | |
| **POWELL** | § | |
| | § | |
| *Counter-the Gordian Group* | § | |

---

## PROPOSED CHARGE OF THE COURT

---

**MEMBERS OF THE JURY:**

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

1

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admit- ted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.[1]

---

[1] Pattern Jury Instructions (Civil Cases), 3.1, Fifth Circuit (2014; rev'd 2016), ("**5th Cir. PJI**" hereafter).

<u>**PRELIMINARY INSTRUCTIONS**</u>

PRELIMINARY INSTRUCTIONS

Instructions for Beginning of Trial[2]

Members of the jury panel, if you have a cell phone, PDA, Blackberry, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down.  During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate.  I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court.  You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case.  For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror.  This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.  Some of the people you encounter may have some connection to the case.  If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method.  Do not make any investigation about this case on your own.  Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony.  Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.  If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court.  If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested

---

2 5th Cir. PJI 1.1

by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiffs will present their case through witness testimony and documentary or other evidence. Next, the defendants will have an opportunity to present their case. The plaintiffs may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, the closing arguments, and my instructions.

It is now time for the opening statements.

4814-3134-0421v.1

### *Burden of Proof: Preponderance of the Evidence[3]*

Plaintiffs, Construction Cost Data, LLC, Job Order Contract Group, LLC, and Managed JOC Solutions, LLC ("**CCD Group**") have the burden of proving their case by a preponderance of the evidence. Likewise, the Defendants, The Gordian Group, Inc. and R.S. Means Company LLC ("**Gordian Parties**") have the burden of proving their case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that the CCD Group Construction Cost Data, LLC, Job Order Contract Group, LLC, and Managed JOC Solutions, LLC or the Gordian Parties The Gordian Group, Inc. and R.S. Means Company LLC have failed to prove any element of their claim by a preponderance of the evidence, then it may not recover on that claim.

---

3 5th Cir. PJI 3.2.

### *Proximate Cause*[4]

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

---

4 Texas Pattern Jury Charges (2016), 100.12. ("**TX PJC**" hereafter).

*Evidence*[5]

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.'

---

5 5th Cir. PJI 3.3.

4814-3134-0421v.1

### *Limiting Instruction*[6]

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

---

6 5th Cir. PJI 2.6.

### *Witnesses*[7]

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness' manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of wit- nesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

---

7 5th Cir. PJI 3.4.

### *Deposition Testimony*[8]

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

--------------------------------------------------

8 5th Cir. PJI 2.13.

***Stipulated Testimony*[9]**

A "stipulation" is something that the attorneys agree is accurate.  When there is no dispute about certain testimony, the attorneys may agree or "stipulate" to that testimony.

Stipulated testimony must be considered in the same way as if that testimony had been received here in court.

---

9 5th Cir. PJI 2.2.

### *Stipulations of Fact*[10]

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

---

10 5th Cir. PJI 2.3.

4814-3134-0421v.1

### *Bias—Corporate Party Involved*[11]

Do not let bias, prejudice or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

---

11 5th Cir. PJI 2.16.

4814-3134-0421v.1

### *No Inference from Filing Suit*[12]

The fact that a person brought a lawsuit or claim and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

---

12 5th Cir. PJI 3.6.

## *Witness Not Called*[13]

[Name of witness] was available to both sides. Plaintiff/Defendant [name] cannot complain that [name of witness] was not called to testify, because either Plaintiff or Defendant [name] could have called [name of witness].

---

13 5th Cir. PJI 2.9.

### *Impeachment by Witness' Inconsistent Statements*[14]

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it.  People may forget some things or remember other things inaccurately.  If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake.  The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

---

14 5th Cir. PJI 2.11.

### *Expert Witnesses*[15]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

_____

15 5th Cir. PJI 3.5.

4814-3134-0421v.1

## *Demonstrative Evidence*[16]

Exhibit [specify] is an illustration. It is a party's [description/picture/model] used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

---

16 5th Cir. PJI 2.8.

### *Charts and Summaries*[17]

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence.  These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

---

17 5th Cir. PJI 2.7.

### *First Recess*[18]

We are about to take our first break in this trial.  Remember, until the trial is over, you are not to discuss this case with anyone, including your fellow jurors.  If anyone approaches you and tries to talk to you about the case, advise me about it immediately.  Do not read or listen to any news reports of the trial or use any technology tools to do independent research. Remember to keep an open mind until all the evidence has been received.  Finally, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.

---

[18] 5th Cir. PJI 2.1.

<u>SPECIFIC INSTRUCTIONS</u>

*Damages*

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.[19]

---

[19] Texas Pattern Jury 101.3 (2016), Charges (2016), (**TX PJC**" hereafter)

4814-3134-0421v.1

Duty to Deliberate; Notes[20]

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a [jury foreperson] [presiding juror] to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your [jury foreperson] [presiding juror] must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the [jury foreperson] [presiding juror] should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

---

20 5th Cir. PJI 3.7.

## GENERAL INSTRUCTIONS

### *[Burden of Proof: Preponderance of the Evidence]*[21]

Plaintiffs, Construction Cost Data, LLC, Job Order Contract Group, LLC, and Managed JOC Solutions, LLC ("**CCD Group**") have the burden of proving their case by a preponderance of the evidence. Likewise, the Defendants, The Gordian Group, Inc. and R.S. Means Company LLC ("**Gordian Parties**") have the burden of proving their case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that the CCD Group Construction Cost Data, LLC, Job Order Contract Group, LLC, and Managed JOC Solutions, LLC or the Gordian Parties The Gordian Group, Inc. and R.S. Means Company LLC have failed to prove any element of their claim by a preponderance of the evidence, then it may not recover on that claim.[22]

---

21 The italicized and bracketed subtitles are not intended to be included in the final charge. They are included merely for ease of reference and comparison to the Fifth Circuit Pattern Jury Instructions.

22 5th Cir. PJI 3.2.

23

<u>SPECIFIC DEFINITIONS AND INSTRUCTIONS</u>

As used in throughout this charge and instructions, the following terms have the following meanings:

a.   **"CCD"** means Construction Cost Data, LLC;

b.   **"CCD Group" or "Plaintiffs"** collectively means the CCD Group, Construction Cost Data, LLC, The Job Order Contract Group. LLC, and Managed JOC Solutions, LLC,

c.   **"CCD Parties"** collectively means Construction Cost Data, LLC, The Job Order Contract Group. LLC, Managed JOC Solutions, LLC, Mark Powell, and Benjamin Stack;

d.   **"Gordian"** means The Gordian Group, Inc.;

e.   **"Gordian Parties"** or **"Defendants"** collectively means The Gordian Group, Inc. and R.S. Means Company, LLC;

f.   **"JOC Group"** means The Job Order Contract Group, LLC;

g.   **"KATA"** means Kata Management, LLC

h.   **"Managed JOC"** means Managed JOC Solutions, LLC;

i.   **"Powell"** means Mark Powell

j.   **"Region 4"** means Region 4Education Service Center.

k.   **"Region 5"** means Region 5 Education Service Center.

l.   **"RS Means"** means R.S. Means Company, LLC;

m.   **"Stack"** means Benjamin Stack;

n.   **"TCPN"** Texas Cooperative Purchasing Network and Region 4 Education Service Center.

4814-3134-0421v.1

## JURY QUESTIONS

### THE CCD GROUP'S AFFIRMATIVE CLAIMS

PRELIMINARY INSTRUCTION

Plaintiffs, Construction Cost Data, LLC, Job Order Contract Group, LLC, and Managed JOC Solutions, LLC, (collectively, the **"CCD Group"**) seeks damages against Defendants, The Gordian Group, Inc. and R.S. Means Company LLC (**"Gordian Parties"**), for violations of the Texas Antitrust Act, tortious interference with contract and business relationships, and business disparagement. The Gordian Parties deny such claims. To help you understand the evidence in this case, I will explain some of the legal terms you have heard during this trial.

*Tortious Interference with Existing Contract*

TORTIOUS INTERFERENCE—GENERALLY

To prevail on its claim for tortious interference with an existing contract, the CCD Group must prove four elements by a preponderance of the evidence:  (1) the existence of a contract subject to interference, (2) an act of interference that was willful and intentional, (3) the act was a proximate cause of the CCD Group's damage, and (4) actual damage or loss occurred.

[Interference is tortious only if it is intentional, and the intent required is the intent to interfere, not just an intent to do the particular acts done.][23]

[EXISTENCE OF CONTRACT[24]

[To be enforceable, a contract must be reasonably definite and certain.  Failure to agree on or include an essential term renders a contract unenforceable.][25]

[INSTRUCTION ON FORMATION OF AGREEMENT[26]

[In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing.  You may not consider the parties' unexpressed thoughts or intentions].

[CONDITIONS PRECEDENT[27]

A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement.  Conditions may, therefore, relate either to the formation of contracts or to liability under them.  A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation.

Conditions precedent to an obligation to perform are acts or events that are to occur after the contract is made and that must occur before there is a right to immediate performance and before there can be a breach of contractual duty.

Although no particular words are necessary to create a condition, terms such as "if," "provided that," and "on condition that" usually connote a condition rather than a covenant or promise.  Absent such a limiting clause, whether a provision represents a

---

[23] TX PJC 106.1 comments; Southwestern Bell Telephone Co. v. John Carlo Texas, Inc., 843 S.W.2d 470, 472 (Tex. 1992).

24 TX PJC 101.1.

25 TX PJC, 106.1 and comments (no dispute over existence of contract).(Yes, there is). "If the existence of the contract is in dispute, additional jury questions or instructions may be required. See chapter 101 of this volume." Id.

26 Texas Pattern Jury Charges:  Business, Consumer, Insurance & Employment ("TX PJC" hereafter) 101.3 (2016).

27 TX PJC 101.6.

26

condition or a promise must be gathered from the contract as a whole and from the intent of the parties.]

EXISTENCE OF A CONTRACT[28]

[DELETE SECTION IN ITS ENTIRETY — **No dispute on whether contract exist**][29]

[**We do dispute the existence of the contracts as well as the relevant terms; moreover, it is the first element that you must prove as part of your claim**]

QUESTION NO._____

[Did Job Order Contracting Group, LLC and KATA Management, LLC agree that KATA Management, LLC would exclusively use the Job Order Contracting Group, LLC's Construction Cost Catalogue in its job order contracting?]

[*Did the JOC Group and KATA have a contract?]*

Answer "Yes" or "No."

Answer: _____

QUESTION NO._____

[*Did the CCD and 4Clicks have a contract?*]

[Did Construction Cost Data, LLC and 4Clicks Solutions, LLC agree that 4Clicks Solutions, LLC would exclusively use the Construction Cost Data, LLC's Construction Cost Catalogue in its job order contracting?

Answer "Yes" or "No."

Answer: _____

[Did Construction Cost Data, LLC fail to comply with the requests of 4Clicks Solutions, LLC?

Answer "Yes" or "No."

Answer: _____

If so, was Construction Cost Data, LLC's failure to comply with the requests of 4Clicks Solutions, LLC the basis for the termination of any contract between those parties?

If you answered "Yes" to the preceding question, then answer "Yes" or "No" for this question.  If you answered "No" to the preceding question, do not answer this question.

---

28 TX PJC 101.1.

29 TX PJC, 106.1 and comments;

Answer: _____

If you answered "Yes" to Question _____ [contract formation], then answer the following question.  If you answered "No" to Question _____ [contract formation], then do not answer the following question.

QUESTION NO._____

[*Did the JOC Group and TCPN have a contract?*]

[Did Construction Cost Data, LLC and TCPN agree that TCPN would exclusively use Construction Cost Data, LLC's Construction Cost Catalogue in its job order contracting?

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to Question _____ [contract formation], then answer the following question.  If you answered "No" to Question _____ [contract formation], then do not answer the following question.

4814-3134-0421v.1

INTERFERENCE WITH CONTRACT

Interference is intentional if committed with the desire to interfere with the contract or with the belief that interference is substantially certain to result.

Interference can include conduct that prevents performance of a contract or makes performance of a contract impossible, more burdensome, more difficult, or of less or no value to the one entitled to performance.

[However, ordinarily, merely inducing a contract obligor to do what it has the right to do is not actionable interference.][30]

QUESTION NO._____ [31]

Did Gordian and/or RS Means intentionally interfere with the JOC Group's contract with KATA Management, LLC?

Answer "Yes" or "No" for each of the following:

Gordian:            _____

RS Means:        _____

QUESTION NO._____ [32]

Did Gordian and/or RS Means intentionally interfere with Construction Cost Data, LLC's contract with 4Clicks Solutions, LLC?

Answer "Yes" or "No" for each of the following:

Gordian:            _____

RS Means:        _____

---

[30] These instructions should be moved up with the rest of the general language related to this claim, not in between the questions.

31 TX PJC, 106.1 and comments; AKB Hendrick, LP v. Musgrave Enterprises, Inc., 380 S.W.3d 221, 236 (Tex. App.--Dallas 2012, no pet.).

32 TX PJC, 106.1 and comments; AKB Hendrick, LP v. Musgrave Enterprises, Inc., 380 S.W.3d 221, 236 (Tex. App.--Dallas 2012, no pet.).

4814-3134-0421v.1

QUESTION NO. \_\_\_\_ [33]

Did Gordian and/or RS Means intentionally interfere with the [CCD Group's] [JOC Group's] contract with TCPN?

Answer "Yes" or "No" for each of the following:

      Gordian:      _____

      RS Means:    _____

---

[33] TX PJC, 106.1 and comments; AKB Hendrick, LP v. Musgrave Enterprises, Inc., 380 S.W.3d 221, 236 (Tex. App.--Dallas 2012, no pet.).

4814-3134-0421v.1

### *Tortious Interference with Prospective Business Relations*

[WRONGFUL][34] INTERFERENCE WITH BUSINESS RELATIONSHIP

[Gordian and/or RS Means wrongly interfered with the prospective business relationship if:]

[To prevail on its claim for tortious interference with prospective business relations, Job Order Contracting Group, LLC must prove by a preponderance of the evidence all five of the following elements against the same entity:]

(1) there is a reasonable probability that the CCD Group would have entered into a business relationship with a third party (2) Gordian and/or RS Means either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct, (3) Gordian and/or RS Means was independently tortious or unlawful; (4) the interference proximately caused the CCD Group's injury, and (5) the CCD Group suffered actual damage or loss as a result.

QUESTION NO._____ [35]

[If you answered "No" to Question ____ [contract formation], then answer the following question.  If you answered "Yes" to Question ____ [contract formation], then do not answer the following question.]

Did Gordian and/or RS Means wrongly interfere with the JOC Group's prospective business relationship with KATA?

Answer "Yes" or "No" for each of the following:

Gordian:                   _____

RS Means:               _____

QUESTION NO._____ [36]

[If you answered "No" to Question ____ [contract formation], then answer the following question.  If you answered "Yes" to Question ____ [contract formation], then do not answer the following question.]

---

[34] TX PJC, 106.3.

35 TX PJC, 106.1; 106.3 and comments.

36 TX PJC, 106.1; 106.3 and comments.

Did Gordian and/or RS Means wrongly interfere with the Construction Cost Data, LLC's prospective business relationship with 4Clicks Solutions, LLC?

Answer "Yes" or "No" for each of the following:

      Gordian:       _____

      RS Means:      _____

QUESTION NO._____[37]

    [If you answered "No" to Question \_\_\_\_ [contract formation], then answer the following question.  If you answered "Yes" to Question \_\_\_\_ [contract formation], then do not answer the following question.]

Did Gordian and/or RS Means wrongly interfere with the JOC Group's prospective business relationship with TCPN?

Answer "Yes" or "No" for each of the following:

      Gordian:       _____

      RS Means:      _____

QUESTION NO._____[38]

    [If you answered "No" to Question \_\_\_\_ [contract formation], then answer the following question.  If you answered "Yes" to Question \_\_\_\_ [contract formation], then do not answer the following question.]

Did Gordian and/or RS Means wrongly interfere with the [CCD Group's] [JOC Group's] prospective business relationship with Region 5?

Answer "Yes" or "No" for each of the following:

      Gordian:       _____

      RS Means:      _____

---

37 TX PJC, 106.1; 106.3 and comments.

38 TX PJC, 106.1; 106.3 and comments.

*Business Disparagement*

QUESTION NO._____[39]

Did Gordian and/or RS Means disparage the business of the CCD Group?

> Gordian and/or RS Means disparage the business of the CCD Group if they publish a disparaging false statement about the business, and when they publish the statement, they know the falsity of the statement or they acted with reckless disregard of whether the statement is false, or if they act with ill will or intend to interfere with the economic interest of the CCD Group, and their publication of the statement played a substantial part in inducing others not to do business with the CCD Group and resulted in a specific pecuniary loss to the CCD Group.

> A statement is "published" if it is intentionally communicated to a person other than the CCD Group who is capable of understanding its meaning.

> [In answering this question, you may consider only the following statements:
>
> • The contents of the cease and desist letters.]

Answer "Yes" or "No" for each of the following:

Gordian:          _____

RS Means:          _____

---

[39] TX PJC, 110.15 and comments.  The Pattern Jury Charge requires that the allegedly false and defamatory statements be identified.  Here, the only allegation of such statement is the cease and desist letters.

4814-3134-0421v.1

*[Violations of the] Texas Antitrust Act—Monopoly*

MONOPOLY [VIOLATION] GENERALLY

The CCD Group allege that they were injured by the Gordian Parties and R.S. Means' unlawful monopolization of the market for job order contracting unit price books in Texas.  To

[prevail on this claim,]

[establish a violation of the Texas Antitrust Act;]

the CCD Group must prove each of the following elements by a preponderance of the evidence:

(1) that the Gordian Parties and R.S. Means possess monopoly power in the relevant market;

[and]

(2) that the Gordian Parties and R.S. Means willfully acquired or maintained monopoly power in that market by engaging in anticompetitive conduct

[.]

[; and (3) that the CCD Group were injured in their business because of the Gordian Parties and R.S. Means anticompetitive conduct.][4041]

---

40 American Bar Association Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, C-2 (2005 ed.) (hereinafter "**ABA**")..

41 Proof of an injury to competition is not an element for a Texas monopolization-based antitrust claim. Great W. Directories, Inc. v. Southwestern Bell Tel. Co., 63 F.3d 1378, 1385 (5th Cir. 1995), opinion withdrawn and superseded in part, 74 F.3d 613 (5th Cir. 1996), vacated pursuant to settlement (Aug. 21, 1996).  The third element is not an injury to competition, it is an injury to the plaintiffs.  It is the causation requirement of the claim ("The CCD Group allege that they were injury by the Gordian Parties and R.S. Means unlawful monopolization….).  The Act itself only confers standing for a private cause of action on "[a]ny person . . . whose business or property has been injured by reason of any conduct declared unlawful in Subsection (a), (b), or (c) of Section 15.05 of this Act . . . ." Tex. Bus. & Com. Code § 15.21.  Courts have noted that this requirement imposes an additional element that requires proof of harm.  For example, in Coca-Cola Co. v. Harmar Bottling Co., 218 S.W.3d 671 (Tex. 2006), franchisees of RC Cola argued under the Act that Coca-Cola had established monopoly power in the Arkansas-Louisiana-Texas region through their use of calendar marketing agreements (CMAs).  The franchisees argued that failure to show market harm was not fatal to their monopoly claims, arguing that they "were required to show only 'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident.'"  Id. at 690.  The Court disagreed, finding that "this requires evidence of some harm to competition in the market."  Since the franchisees had not proven that harm, their claims of monopolization, attempted monopolization, and conspiracy to monopolize failed: "[S]ince there is evidence only that Coke's CMAs could have had an adverse effect on competition in a relevant market, not that they actually did, existence of the CMAs alone cannot prove Coke engaged in predatory or anticompetitive conduct." Id. at 690.  See also Marlin, 307 S.W.3d at 424 ("Standing to pursue an antitrust suit exists if the plaintiff shows the following: (1) injury-in-fact, which is an injury to the plaintiff proximately caused by the defendant's conduct; (2) antitrust injury; and (3) proper plaintiff status, which assures that other parties are not better situated to bring suit."); In re Memorial Hermann Hospital Sys., 464 S.W.3d 686, 705 (Tex. 2015) ("The TFEAA grants a private right of action to bring suit, but only to persons 'whose business or property has been injured by reason of any conduct declared unlawful' in the Act. This requires a plaintiff to prove 'antitrust injury, which is to say injury of the type the

antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'") (internal citations omitted).

4814-3134-0421v.1

[MONOPOLY-POSSESSION] [MONOPOLIZATION]

Monopoly power is the power to control prices or exclude competition in a relevant market. The power to control prices is the power of a company to establish and maintain appreciably higher prices for its goods or services, for an appreciable period of time, than those competitively charged for equivalent goods or services without a substantial loss of business to competitors.

[However, monopoly power, if and of itself, is not unlawful.][42]

There can be both direct and indirect proof of the existence of monopoly power in a market.

[If the evidence establishes that the Gordian Parties has the power to control prices or exclude competition in the relevant market, then you may conclude that the Gordian Parties have monopoly power in the market. Monopoly power may also be proven indirectly, by evidence of the structure of the market, by evidence of market share, and by barriers to entry into the market.] [43]

[Here, the CCD Group have the burden to prove by a preponderance of the evidence that the Gordian Group and R.S. Means have the power to control prices or exclude competition in the relevant market in order for you to conclude that the Gordian Parties have monopoly power in the relevant market].

[Monopoly power may be proven by direct evidence of a company's control over prices in the market.][44]

[The CCD Group must also prove that the Gordian Parties and R.S. Means have the power to maintain the prices above a competitive level for a significant period of time.]

[For example, monopoly power may be shown by proving that the Gordian Parties have the ability to raise or maintain the prices it charges for goods or services in the relevant market above competitive levels for a significant period of time. the CCD Group must prove that the Gordian Parties have the power to do so by itself, without the assistance of, and despite competition from, any existing or potential competitors. On the other hand, if the Gordian Parties attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then the Gordian Parties do not have monopoly power.] [45]

[If the Gordian Parties and R.S. Means attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase

---

42 ABA C-4.

43 *Sanger Ins. Agency, Inc., v. HUB International, LTD Midwest, Ltd.,*. No. 4-14-cv-171-RAS.June 17, 2016. Joint Proposed Jury Instructions and Verdict Form 2016 WL 4427028

44 Joint Proposed Jury Instructions and Verdict Form 2016 WL 4427028

45 *Id.*

would become unprofitable and would have to be withdrawn, then the Gordian Parties and R.S. Means do not have monopoly power.][46]

[Similarly, monopoly power may be shown by proving that the Gordian Parties has the ability to exclude competition from the relevant market.] [47]

[Similarly, the CCD Group must prove that the Gordian Parties and R.S. Means have the ability to exclude competition. For example, if the Gordian Parties and R.S. Means attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then the Gordian Parties and R.S. Means do not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that the Gordian Parties and R.S. Means have monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services, the ability to maintain an efficient business operation, or superior advertising or marketing.]

[However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power.] [48]

[Monopoly power may also be proven indirectly, by evidence of the structure of the market, by evidence of market share, and by barriers to entry into the market.][49]

One factor you should consider is the Gordian Group' market share. Based on the evidence you have heard, you should determine the Gordian Group' market share in the relevant markets. A market share above 50 percent may be sufficient to support an inference that the Gordian Parties have monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

In considering whether the Gordian Parties have monopoly power it is also important to consider other aspects of the relevant market, such as: the existence of barriers to entry into the market by potential competitors, entry into and exit from the market by competitors, and the size and number of competitors in the market. Along with the Gordian Group' market share, these factors should inform you as to whether

[the CCD Group have proven that]

---

46 ABA at C-23.

47 Joint Proposed Jury Instructions and Verdict Form 2016 WL 4427028

48 *Id.*

49 *Id.*

the Gordian Parties have monopoly power.

The trend in the Gordian Group' market share is also something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that the Gordian Parties lack monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that the Gordian Parties have monopoly power.

> [The ability of the CCD Group or some other agents or brokers to enter the market and gain some market share does not preclude a finding that the Gordian Parties have monopoly power. The test is not total foreclosure of others from the relevant market, but whether the challenged practices bar a substantial number of rivals or severely restrict the relevant market's range. the Gordian Parties may still have monopoly power even if the CCD Group were able to gain some market share for some period of time.] [50]

QUESTION NO._____ [51]

Did Gordian and R.S. Means possess monopoly power over job order contracting unit price book market in Texas?

Answer "Yes" or "No":    _____

---

50 *Id.*

51 *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 854 (1st Cir. 2016) (*citing United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)); *Sanger Ins. Agency, Inc.,* Joint Proposed Jury Instructions and Verdict Form 2016 WL 4427028.

39

MONOPOLY—ANTICOMPETITIVE CONDUCT

Anticompetitive conduct is acts or practices, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating or foreclosing the efforts of other companies to compete for customers within the relevant market. You must distinguish harm to competition from harm to a single competitor or group of competitors, which in itself, is not harm to competition. Harm to a competitor in the absence of harm to the process of competition and consumer welfare, is not harm to competition.

> [You should distinguish the acquisition or maintenance of monopoly power through anticompetitive conduct from the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.][52]

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the achievement of these goals is not unlawful as long as a company does not use an anticompetitive means to achieve these goals.

In determining whether the Gordian Group' conduct was anticompetitive or legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits of price, quality, or service, whether it provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing. Anticompetitive conduct must represent something more than the conduct of business that is part of the normal competitive process or commercial success. Anticompetitive conduct must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason.

QUESTION NO._____[53]

Did Gordian and R.S. Means willfully acquire or maintain its monopoly power in the job order contracting unit price book market in Texas by engaging in anticompetitive conduct?

Answer "Yes" or "No":        _____

---

52 ABA C-26; *see also Verizon Communications Corp. v. Law Offices of Curtis V. Trinko LLP*, 124 S.Ct. 872, 879 (2004); *U.S. v. Grinnell Corp.*, 384 U.S. 563 (1966); *U.S. v. AMR Corp.*, No. 01-3203, 2003 WL 21513205, at *3 (4th Cir. 2003); *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003); *Virgin Atl. Airways, Ltd. v. British Airways LPC*, 257 F.3d 256, 266 (2d Cir. 2001); *U.S. v. Microsoft*, 253 F.3d 34, 58 (D.C. Cir. 2001).

53 *Pac. Bell Tel. Co. v. Linkline Comms., Inc.*, 555 U.S. 438, 448 (2009); *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 523 (5th Cir. 1999); *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1066 (10th Cir. 2013); *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008).

4814-3134-0421v.1

*[Violations of the Texas Antitrust Act—Attempted Monopoly]*

ATTEMPTED MONOPOLY

You must decide if the evidence shows the Gordian Parties acted with the conscious aim of acquiring the power to control prices or exclude competition in the relevant market.

There are several ways in which the CCD Group may prove the Gordian Parties had the specific intent to monopolize. Specific intent may be proven by direct evidence. For example, there may be evidence of direct statements of the Gordian Parties' intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of the Gordian Parties at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of the the Gordian Group. You must be careful, however, to distinguish between the the Gordian Group' intent to complete aggressively (which is lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that the the Gordian Parties actually intended to obtain a monopoly, specific intent also may be proven by indirect evidence. For example, specific intent may be inferred from what the Gordian Parties did. For example, if the evidence shows that the natural and probable consequence of the Gordian Group' conduct in the relevant market was to give the the Gordian Parties control over prices or to exclude competition, and that this was plainly foreseeable by the the Gordian Group, then you may (but are not required to) infer the the Gordian Parties specifically intended to acquire monopoly power.

In determining whether there was a dangerous probability that the Gordian Parties would acquire monopoly power in a market, you should consider such factors as the Gordian Group; market share, whether the barriers to entry into the market made it difficult for competitors to enter the market, and the likely effect of any anticompetitive conduct the Gordian Group' share of the market. I have instructed you on these factors above.

A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that the Gordian Parties would ultimately acquire market power.

QUESTION NO._____ [54]

Did Gordian and R.S. Means engage in predatory or anticompetitive conduct with a specific intent to achieve monopoly power in the job order contracting unit price book market in Texas, and a dangerous probability of achieving monopoly power?

Answer "Yes" or "No":        _____

---

[54] *Id.*

4814-3134-0421v.1

42

4814-3134-0421v.1

*Defenses*

LEGAL JUSTIFICATION[55]

QUESTION NO._____

If you answered "Yes" to Question No. ___, then answer the following question. Otherwise, do not answer the following question.

Did the Gordian Parties and R.S. Means have a good-faith belief that they had a valid basis to send cease-and-desist letters regarding their copyrighted material to KATA Management, LLC?

Answer "Yes" or "No."

Answer: _____

QUESTION NO._____

If you answered "Yes" to Question No. ___, then answer the following question. Otherwise, do not answer the following question.

Did the Gordian Parties and R.S. Means have a good-faith belief that they had a valid basis to send cease-and-desist letters regarding their copyrighted material to 4Clicks Solutions, LLC?

Answer "Yes" or "No."

Answer: _____

QUESTION NO._____

If you answered "Yes" to Question No. ___, then answer the following question. Otherwise, do not answer the following question.

Did the Gordian Parties and R.S. Means have a good-faith belief that they had a valid basis to send cease-and-desist letters regarding their copyrighted material to TCPN?

Answer "Yes" or "No."

Answer: _____

---

55 TX PJC 106.2. These go to the tortious interference and business disparagement claims. They should be immediately after those instructions/questions, not here.

44

4814-3134-0421v.1

[SHAM LITIGATION

QUESTION NO._____ [56]

Gordian and R.S. Means claim that their conduct did not violate the law because they were trying in good faith to influence government action. The CCD Parties claim that this action was a sham or a pretext to restrain competition.

[NOERR-PENNINGTON DOCTRINE

The Gordian Entities assert that their conduct did not violate the law because they had a good faith basis to be concerned that Plaintiffs were using proprietary and/or copyrighted material of Gordian and/or R.S. Means. A party's judicial activity is immunized from liability (including petitioning the courts) even if the activity eliminates competition, unless the activity is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor."[57] This principle extends not only to "protect first amendment petitioning of the government from claims brought under federal and state laws . . . [including, but not limited to] common law tortious interference with contractual relations."[58]

This principle also "extends to threats to litigate, such as cease-and-desist letters,."[59] A litigant, or future litigant, should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.[60]

This immunity extends to pre-litigation correspondence against a competitor's customers, so long as the conduct is reasonably attendant upon effective litigation in good faith, or if those customers can also be potentially liable.[61] This immunity "does not extend to judicial activity that constitutes "sham" litigation. "Sham" litigation requires two elements be met:

---

56 *United States Supreme Court: California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961); *Affiliated Capital Corp. v. City of Houston,* 735 F.2d 1555, 1566 (5th Cir. 1984); *Pension Advisory Group, Ltd. v. Country Life Ins. Co.,* 771 F. Supp. 2d 680, 699 (S.D. Tex 2011).

57 *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961))

58 *Network Sales & Mktg., LLC v. Ningbo Desa Elec. Mfg. Co.*, No. 3:14-CV-1108-G, 2015 WL 2341063, at *7 (N.D. Tex. May 15, 2015) (quoting *Video International Production, Inc. v. Warner–Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir.1988)); accord *RRR Farms, Ltd. V. AM. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 126-31 (Tex. App. –Houston [14th Dist.] 1997, pet. denied) (holding doctrine applies to tort claims under Texas state law); *Profinity, LLC v. One Techs., L.P.*, No. 05-14-00403-CV, 2015 WL 9257025, at *13-15 (Tex. App. – Dallas Dec. 17, 2015, no pet.) (holding doctrine applies to Texas antitrust claim). The *Noerr-Pennington* doctrine also immunizes trademark owners' attempts to protect their intellectual property rights. *See GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 742 (N.D. Tex. 2010).

59 *Network Sales & Mktg., LLC*, at *8 (citing *Coastal States Mktg, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir.1983)).

60 *Coastal States Mktg, Inc.*, 694 F.2d at 1367.

61 *Cf. Laitram Mach., Inc. v. Carnitech A/S*, 901 F. Supp. 1155, 1161 (E.D. La. 1995) (declining to extend *Noerr-Pennington* immunity to company who sent three letters to competitors' customers claiming that competitor

45

(1) whether the litigation activity is "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits;"[62] and

(2) If the activity was objectively baseless, whether the subjective intent was merely to interfere.[63]

If either element is not met, the litigation activity is not a "sham" and is immunized.[64]

The sham exception  does not qualify for *Noerr* immunity if 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'"[65] In cases where the exception applies, it "removes *Noerr-Pennington* immunity 'when one party has begun litigation not to win that litigation, but rather to force its competitor to waste time and money in defending itself.'"[66] Similarly, misrepresentations and false statements do not qualify for protection under Noerr-Pennington doctrine.[67]

Whether the  Gordian Parties' conduct is within the sham exception is a fact issue for which the Gordian Parties have the burden of proof.[68] When a party does not have "an entirely reasonable ground for bringing suit," a claim is objectively baseless.[69] Once there is a determination that the claim (or, in this case, the pre-suit activity) was objectively baseless, the focus is on whether the attempt to interfere with the competitor's business was "through the use of the governmental process . . . as an anticompetitive weapon."[70]

---

infringed its patent and violated trade secrets) *with Coastal States Mktg.*, 694 F.2d at 1367-68 & n. 30 (finding that *Noerr-Pennington* immunity extends to threats against a competitors' customers which are in good faith and reasonably attendant upon effective litigation but does not extend to bad faith efforts); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 & n. 28 (S.D.N.Y. 1997) ("In declining to follow *Laitram Machinery,* the Court notes that that court cited no authority for its conclusion and failed to cite *Barq's Inc. v. Barq's Beverages, Inc.,* 677 F.Supp. 449 (E.D.La.1987), which was decided seven years earlier by the same district court and which concluded that immunity extended to letters incidental to litigation").

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993)); *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 690 (5th Cir. 2010) (citations omitted).

[66] *Source Network Sales*, 2015 U.S. Dist. LEXIS 63794, at \*23 (citing *Video International Production, Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988)). "Baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants v. NLRB,* 461 U.S. 731, 743 (1983).

[67] *Pumpkin Air, Inc. v. City of Addison*, 608 F.Supp. 787, 792 n.4 (N.D. Tex. 1985) (citation omitted).

[68] *Feminist Women's Health Center v. Mohammad*, 586 F.2d 530, 543 (5th Cir. 1978), cert. denied, 444 U.S. 924, 100 S. Ct. 262, 62 L. Ed. 2d 180 (1979); *GoForIt Entm't, LLC*, 750 F.Supp. at 742.

[69] *Prof'l Real Estate Investors*, 508 U.S. at 60 n.5 (citations omitted).

[70] *Id.* at 60 (citation and quotation marks omitted).

46

QUESTION NO._____

Did the Gordian Parties have an entirely reasonable ground for sending the cease and desist letter to the CCD Parties?

     Answer "Yes" or "No": _____

Did the Gordian Parties have an entirely reasonable ground for sending the cease and desist letter to TCPN?

     Answer "Yes" or "No": _____

Did the Gordian Parties have an entirely reasonable ground for sending the cease and desist communications to 4Clicks?

     Answer "Yes" or "No": _____

QUESTION NO._____

Were Gordian and R.S. Means' cease and desist letters threatening lawsuits to the CCD Group, TCPN, KATA Management, LLC, and 4Clicks Solutions, LLC a sham or a pretext to cover the Gordian Group' attempt to interfere directly with the business relationships of the CCD Group?

    Gordian and R.S. Means cease and desist letters and threats of lawsuits constitute a sham or a pretext to cover an attempt to interfere directly with the CCD Group's business relationships if:

        (1) The cease and desist letters and threats of lawsuits were objectively baseless and the Gordian Group' motivation was to attempt to interfere directly with the business relationships of the CCD Group through the use of the cease and desist letters and threats of lawsuits as opposed to the outcome of that process;

        or

        (2) The cease and desist letters and threats of lawsuits were based upon false or misleading statements.

Answer "Yes" or "No": _____]

Was the Gordian Group and R.S. Means' pre-litigation correspondence "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits?"

Answer "Yes" or "No": _____

47

If the activity of the Gordian Group and R.S. Means was objectively baseless, was the subjective intent merely to interfere with the CCD Parties?

Answer "Yes" or "No": _____

4814-3134-0421v.1

*Damages*

COMPENSATORY DAMAGES

If you answered "Yes" to Question __ [INTERFERENCE WITH CONTRACT- KATA] or Question ___ [INTERFERENCE WITH BUSINESS RELATIONSHIP KATA] as to Gordian and/or RS Means, then answer the following question as to that party. Otherwise, do not answer the following question.[71]

Question NO. 13[72]

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [the CCD Group of their] [JOC Group for its] damages, if any, proximately caused by such interference?

Consider the following elements of damage, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1.  Lost vendor fees for TCPN KATA JOC Projects sustained in the past: _____

2.  Lost vendor fees for TCPN KATA JOC Projects, that, in reasonable probability, will be sustained in the future: _____

3.  Lost sales for KATA Audits sustained in the past: _____

4.  Lost sales for KATA Audits, that, in reasonable probability, will be sustained in the future: _____

5.  Lost sales from 4Clicks Solutions, LLC licenses sustained in the past: _____

6.  Lost sales from 4Clicks Solutions, LLC licenses that, in reasonable probability, will be sustained in the future: _____

---

71 TX PJC, 115.1.

72 TX PJC, 115.22.

4814-3134-0421v.1

If you answered "Yes" to Question __ [INTERFERENCE WITH CONTRACT- 4CLICKS] or Question ___ [INTERFERENCE WITH BUSINESS RELATIONSHIP 4CLICKS] as to Gordian and/or RS Means, then answer the following question as to that party. Otherwise, do not answer the following question.[73]

Question NO. 14[74]

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [the CCD Group of their] [Construction Cost Data, LLC for its] damages, if any, proximately caused by such interference?

Consider the following elements of damage, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1.  Lost sales from 4Clicks Solutions, LLC licenses sustained in the past: _____

2.  Lost sales from 4Clicks Solutions, LLC licenses that, in reasonable probability, will be sustained in the future: _____

---

[73] TX PJC, 115.1.

[74] TX PJC, 115.22.

If you answered "Yes" to If you answered "Yes" to Question __ [INTERFERENCE WITH CONTRACT- TCPN] or Question __ [INTERFERENCE WITH BUSINESS RELATIONSHIP - TCPN] as to Gordian and/or RS Means, then answer the following question as to that party. Otherwise, do not answer the following question.[75]

QUESTION NO._____ [76]

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [the CCD Group of their] [JOC Group for its] damages, if any, proximately caused by such interference?

Consider the following elements of damage, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1. Lost vendor fees for TCPN KATA JOC Projects sustained in the past:
   _____

2. Lost vendor fees for TCPN KATA JOC Projects, that, in reasonable probability, will be sustained in the future: _____

3. Lost sales for KATA Audits sustained in the past: _____

4. Lost sales for KATA Audits, that, in reasonable probability, will be sustained in the future: _____

5. Lost sales from 4Clicks Solutions, LLC licenses sustained in the past:
   _____

6. Lost sales from 4Clicks Solutions, LLC licenses that, in reasonable probability, will be sustained in the future: _____

_____

75 TX PJC, 115.1.

76 TX PJC, 115.22.

51

If you answered "Yes"" to Question _ [INTERFERENCE WITH BUSINESS RELATIONSHIP REGION 5] as to Gordian and/or RS Means, then answer the following question as to that party. Otherwise, do not answer the following question.[77]

QUESTION NO._____[78]

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [the CCD Group of their] [JOC Group of its] damages, if any, proximately caused by such interference?

Consider the following elements of damage, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1. Lost sales from Region 5 ESC work sustained in the past: _____

2. Lost sales from Region 5 ESC work, that, in reasonable probability, will be sustained in the future: _____

---

77 TX PJC, 115.1.

78 TX PJC, 115.22.

If you answered "Yes" to Question No. _____ as to Gordian and/or RS Means, then answer the following question as to that party. Otherwise, do not answer the following question.[79]

QUESTION NO._____ [80]

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the CCD Group of their actual pecuniary loss, if any, that was proximately caused by Gordian and/or RS Mean's disparagement?

Consider the following elements of damage, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer [separately] in dollars and cents for damages, if any.

   ANSWER: _____

1.  Lost vendor fees for TCPN KATA JOC Projects sustained in the past:

         Gordian: _____

         R.S.Means:_____

2.  Lost vendor fees for TCPN KATA JOC Projects, that, in reasonable probability, will be sustained in the future:

         Gordian: _____

         R.S.Means:_____

3.  Lost sales for KATA Audits sustained in the past:

         Gordian: _____

         R.S.Means:_____

_____

79 TX PJC, 115.1.

80 TX PJC, 115.34.

4. Lost sales for KATA Audits, that, in reasonable probability, will be sustained in the future:

        Gordian: _____

        R.S.Means:_____

5. Lost sales from 4Clicks Solutions, LLC licenses sustained in the past:

        Gordian: _____

        R.S.Means:_____

6. Lost sales from 4Clicks Solutions, LLC licenses that, in reasonable probability, will be sustained in the future: _____

        Gordian: _____

        R.S.Means:_____

7. Lost sales from Region 5 ESC work sustained in the past:

        Gordian: _____

        R.S.Means:_____

8. Lost sales from Region 5 ESC work, that, in reasonable probability, will be sustained in the future:

        Gordian: _____

        R.S.Means:_____

If you answered "Yes" to Question 10 or 11, then answer the following question as to that party. Otherwise, do not answer the following question.[81]

QUESTION NO._____[82]

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the CCD Group of their damages, if any, proximately caused by the Gordian Group' anticompetitive conduct?

Consider the following elements of damage, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer [separately] in dollars and cents for damages, if any.

ANSWER: _____

1. Lost vendor fees for TCPN KATA JOC Projects sustained in the past: _____

2. Lost vendor fees for TCPN KATA JOC Projects, that, in reasonable probability, will be sustained in the future: _____

3. Lost sales for KATA Audits sustained in the past: _____

4. Lost sales for KATA Audits, that, in reasonable probability, will be sustained in the future: _____

5. Lost sales from 4Clicks Solutions, LLC licenses sustained in the past: _____

6. Lost sales from 4Clicks Solutions, LLC licenses that, in reasonable probability, will be sustained in the future: _____

7. Lost sales from Region 5 ESC work sustained in the past: _____

8. Lost sales from Region 5 ESC work, that, in reasonable probability, will be sustained in the future: _____

---

81 TX PJC, 115.1.

82 TX PJC, 115.34.

4814-3134-0421v.1

PUNITIVE, EXEMPLARY, AND TREBLE, DAMAGES

INSTRUCTIONS TBD[83]

*[Parties agree to submit jury instructions on such damages if trial proceeds to second portion of bifurcated trial]*

MONOPOLY—INTENTIONAL CONDUCT

QUESTION NO._____ [84]

Do you find [from a preponderance of the] [by clean and convincing] evidence that the Gordian Parties' anticompetitive conduct was willful or flagrant[, e.g., intentional or conspicuously offensive]?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Willful" conduct is undertaken "knowingly, intentionally, deliberately, and designedly."[85]

"Flagrant" conduct is conspicuously or obviously offensive.

Answer "Yes" or "No":        _____

TORTIOUS INTERFERENCE—MALICIOUS CONDUCT

QUESTION NO._____ [86]

Do you find from a preponderance of the evidence that the Gordian Parties' interference with the CCD Group's contracts or business relationships was malicious, meaning  specifically done to cause substantial injury or harm to the CCD Parties or their business?

---

[83] PJC 115.38 and 5th Cir. PJI 15.7

[84] *See Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 678 (Tex. 2006) (Jury finding that conduct was willful or flagrant, based on conduct being intentional or conspicuously offensive.); See also 13 Dorsaneo, Texas Litigation Guide § 200A.10 (2018) ("There is no statutory definition of "willful or flagrant" in the Act. One commentator has asserted that treble damages should be awarded at least for injuries resulting from monopoly violations under Section 15.05(b) of the Texas statute and from per se violations of Section 15.05(a) of the statute") (citing [Baron, A New Era in Texas Antitrust: the Texas Free Enterprise and Antitrust Act of 1983, 18 Trial L. Forum no. 2, p. 16, 18 (1983)].

[85] *See, e.g., Geders v. Aircraft Engine and Accessory Co.*, 599 S.W.2d 646, 650-51 (Tex. App.—Dallas 1980).

[86] *Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App.—Texarkana 1999, no pet.); Tex. Civ. Prac. & Rem. Code § 41.001.

56

Answer "Yes" or "No":         _____

Answer the following question only if you unanimously answered "Yes" regarding the same entity to Question _____ (Tortious Interference).  Otherwise, do not answer the following question.[87]

To answer "Yes" to the following question, your answer must be unanimous regarding the same entity.  You may answer "No" to the following question only upon a vote of ten or more jurors.  Otherwise, you must not answer the following question.

QUESTION _____

Do you find, by clear and convincing evidence, that the harm, if any, from tortious interference to the CCD Parties resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by the Gordian Group or R.S. Means to cause substantial injury to the CCD Parties.

Answer "yes" or "no" or leave blank for each of the following entities:

The Gordian Group:  _____

R.S. Means: _____

BUSINESS DISPARAGEMENT—MALICIOUS CONDUCT

QUESTION NO._____[88]

Do you find by clear and convincing evidence that the Gordian Parties' acted with malice in publishing the disparaging statements about the CCD Parties, meaning the Gordian Parties knew such statements were false, they acted with reckless disregard for whether or not such statements were false, they with ill will, or they intended to interfere with the CCD Parties economic interests.?

Answer "Yes" or "No":         _____

Answer the following question only if you unanimously answered "Yes" regarding the same entity to Question _____ (Business Disparagement).  Otherwise, do not answer the following question.[89]

_____

[87] PJC 115.37.

88 Tex. Civ. Prac. & Rem. Code § 41.003; *Hurlbut v. Gulf Atl. Life Ins.*, 749 S.W.2d 762, 766 (Tex. 1987).

57

To answer "Yes" to the following question, your answer must be unanimous regarding the same entity.  You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

QUESTION _____

Do you find, by clear and convincing evidence, that the harm, if any, from business disparagement to the CCD Parties resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by the Gordian Group or R.S. Means to cause substantial injury to the CCD Parties.

Answer "yes" or "no" or leave blank for each of the following entities:

The Gordian Group:  _____

R.S. Means: _____

---

[89] PJC 115.37.

4814-3134-0421v.1

## THE GORDIAN GROUP' AFFIRMATIVE CLAIMS

PRELIMINARY INSTRUCTION

Defendant, R.S. Means Company, LLC ("**R.S. Means**") claims ownership of a copyright and seeks damages against the Counterclaim Defendants, Construction Cost Data, LLC, Job Order Contract Group, LLC, Managed JOC Solutions, LLC, Benjamin Stack, and Mark Powell (collectively, the "**CCD Parties")** for copyright infringement. The CCD Parties deny infringing the copyright..

Defendants, The Gordian Group, Inc., and  R.S. Means (the "Gordian claims ownership of a copyright and seeks damages against the Counterclaim Defendants, Construction Cost Data, LLC, Job Order Contract Group, LLC, Managed JOC Solutions, LLC, Benjamin Stack, and Mark Powell (collectively, the "**CCD Parties")** for copyright infringement. The CCD Parties deny infringing the copyright..

The Defendants, The Gordian Group and R.S. Means Company, LLC, have brought counterclaims seeking damages against the Plaintiffs, Construction Cost Data, LLC, Job Order Contract Group, LLC, Managed JOC Solutions, LLC, Benjamin Stack, and Mark Powell (collectively, the "CCD Parties") for copyright infringement, unfair competition and unjust enrichment.  The CCD Parties deny such claims.  To help you understand the evidence in this part of the case, I will explain some of the legal terms you have heard during this trial.

*Copyright Infringement*

COPYRIGHT —GENERALLY

DEFINITION OF COPYRIGHT. The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time. Copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program. Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted. The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.][90]

[COPYRIGHT—DEFINED (17 U.S.C. § 106)[91]

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to: (1) authorize, or make additional copies, or otherwise reproduce the copyrighted work; (2) recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work; and (3) distribute copies of the copyrighted work to the public by sale or other transfer of ownership. It is the owner of a copyright who may exercise these exclusive rights to copy. In general, copyright law protects against production, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement. Even though one may acquire a copy of the copyrighted work, the copyright owner retains rights and control of that copy, including uses that may result in additional copies or alterations of the work.]

[To establish infringement, R.S. Means must prove two things: First, you must find that R.S. Means owned a valid copyright. And second, you must find that the CCD Parties copied the work's original components. To qualify for copyright protection, the claimed work must be original to the author. "Original" means only that the author independently created the work – the author didn't copy it from other works – and it possesses at least a minimal degree of creativity. To establish infringement, R.S. Means must prove two things: First you must find that R.S. Means owed a valid copyright. And second, you must find that the CCD Parties copied the work's original components.][92]

R.S. MEANS' BURDEN OF PROOF. In this case, R.S. Means contends that the CCD Parties have infringed R.S. Means' copyright.  R.S Means has the burden of proving by a preponderance of the evidence that R.S Means is the owner of

---

[90] Ninth Circuit Manual of Model Jury Instructions – Civil, 17.0 (2007) ("**9th Cir. MJI**" hereafter).

[91] 9th Cir. MJI 17.1.

[92] Eleventh Circuit Court of Appeals Pattern Jury Charge (2017) 9.1 and 9.2 ("**11th Cir. PCJ**" hereafter)..

[the copyright]

[a valid copyright][93]

and that the CCD Parties copied original elements of the copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

---

[93] 11th Cir. PCJ 9.1 and 9.7

4814-3134-0421v.1

COPYRIGHT REGISTRATION—SUBJECT MATTER (17 U.S.C. § 102)[94]

> [R.S Means' work involved in this trial is known as the "**RS Means 2008 Data Compilation**" a composition of data and descriptions forming a literary work in which words, numbers, or other verbal or numerical symbols or indicia are expressed in such material objects like books]

> [The work that R.S Means claims it has a valid copyright to is known as the "**RS Means 2008 Data Compilation**," which is Defendant's Exhibit 23/Plaintiffs' Exhibit 22.]

> [You are instructed that a copyright may be obtained in the "RS Means 2008 Data Compilation". This work can be protected by the copyright law.] [95]

> [You are instructed that a copyright may be obtained in a compilation and protected by the copyright law. However, the copyright in a factual compilation is thin. Since the underlying facts of a factual compilation are not copyrightable, facts may be freely copied and only the selection, coordination, and arrangement of such facts are entitled to copyright protection. A subsequent compiler remains free to use the same facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement.][96]

Only that part of the work comprised of original works of authorship fixed in any tangible form of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

> [R.S. Means claims that this work is registered as a compilation. For original works created after 1977, the work is automatically copyrighted at the moment of creation – even if the work is never registered with the United States Copyright Office. But generally, no suit for copyright infringement can be brought if the copyright hasn't been registered.

> To advance a copyright-infringement action, the work that R.S. Means claims has been infringed must be registered (or preregistered). If you review the registration certificate and don't find any reference to or identification of the claimed work, R.S. Means can't advance this infringement action]. [97]

QUESTION NO. _____ [98]

Do you find from a preponderance of the evidence that R.S. Means registered the work as a compilation with the United States Copyright Office?

---

[94] 9th Cir. MJI 17.2.

[95] This is a fact at issue. *See* Ellison Order and Memorandum , Doc. 112, p. 12 at §B.
[96] *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 349, 359 (1991).  Feist did not hold that "the copyright in a factual compilation is thin."

[97] 11th Cir. PCJ 9.4

[98] 11th Cir. PCJ 9.4

Answer "Yes" or "No" _____

If your answer to this question is "Yes," answer the next question.

QUESTION NO. _____[99]

If so, when do you find that the registration occurred?

Date: _____[100]

---

[99] 11th Cir. PCJ 9.4

[100] 11th Cir. PCJ 9.4

INVALID COPYRIGHT REGISTRATION

[Ownership of a valid copyright and registration are prerequisites to claiming, copyright infringement. the CCD Parties' claim, as an affirmative defense to R.S. Means' infringement claim, that R.S. Means' copyright registration is invalid because it engaged in fraud on the Copyright Office.

An invalid copyright registration precludes R.S. Means' claim of infringement. To determine that R.S. Means' copyright registration is invalid because of a fraud on the Copyright Office, you must find that it knowingly failed to advise the Copyright Office of facts that would have led the Copyright Office to refuse the application. Unintentional omissions, misstatements, or irregularities generally aren't enough for invalidation. Omissions, misstatements, or irregularities must have been made intentionally to mislead the Copyright Office.

If you find that R.S. Means' registration was invalid because of fraud on the Copyright Office, you must find for the CCD Parties on R.S. Means' copyright-infringement claim. While R.S. Means must establish that its copyright is valid, the CCD Parties must establish by a preponderance of the evidence that the registration is invalid because of misconduct in the registration process.] [101]

QUESTION NO. ____ [102]

Do you find that R.S. Means knowingly, and with the intent to mislead the Copyright Office, concealed, failed to disclose, or misstated information in the copyright registration application?

        Answer "Yes" or "No" _____

If your answer to Question ____ is "Yes," answer the following question. Otherwise, do not answer the following question.

QUESTION NO. ____ [103]

Do you find that the information that R.S. Means concealed, failed to disclose, or misstated would have led the Copyright Office to refuse its copyright application?

        Answer "Yes" or "No" _____

If your answers to both of these questions are "Yes," don't continue with your analysis of R.S. Means' infringement claim.

---

[101] 11th Cir. PCJ 9.8

[102] 11th Cir. PCJ 9.8

[103] 11th Cir. PCJ 9.8

64

4814-3134-0421v.1

COPYRIGHT REGISTRATION-NO PRESUMPTION OF VALIDITY[104]

HOW COPYRIGHT IS OBTAINED. Copyright automatically exists in

[a]

[original]

work the moment it is fixed in any tangible medium of expression.

[The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the 356 Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.] [105]

[After determining that the material is copyrightable and that legal and formal requirements have been satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner. There's no administrative investigation on the originality or uniqueness of the work or a determination of the claim's validity. A certificate of copyright registration is refused only if the work falls outside the broad category of matter eligible for copyright registration.

So while the existence of a copyright registration may create some presumption that a work is indeed entitled to copyright protection, the fact that a copyright registration has been issued doesn't conclusively establish whether the work is entitled to copyright protection.

In this case, R.S. Means' copyright isn't entitled to a presumption of validity. R.S. Means has the burden of establishing by a preponderance of the evidence that R.S. Means owns a valid copyright.][106]

QUESTION NO. _____ [107]

Do you find from a preponderance of the evidence that the RS Means 2008 Data Compilation is (1) original to R.S. Means – not copied from other works – meaning that R.S. Means independently created the RS Means 2008 Data Compilation; and (2) possesses at least a minimal degree of creativity?

Answer "Yes" or "No" _____

---

[104] 11th Cir. PCJ 9.7

[105] Leaves out presumption of valid copyright only if registered within 5 year period.  17 U.S.C. § 410 (c). Only the work that is registered may be sued upon for infringement – here a compilation. 17 U.S.C. § 411(a).

[106] 11th Cir. PCJ 9.7

[107] 11th Cir. PCJ 9.7

65

If your answer to this question is "No," don't continue with your analysis of R.S. Means' claim for infringement.

COPYRIGHT VALIDITY—REGISTRATION OF COMPILATIONS (17 U.S.C. § 101)[108]

An owner is entitled to copyright protection of a compilation. A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

[The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.]

[R.S. Means claims that its work is a compilation and that its selection, arrangement, and coordination of preexisting materials, rather than the materials themselves, are protectable.

The selection, arrangement, and coordination of preexisting materials or data in a compilation does not possess the required degree of creativity for copyright protection if the arrangement or coordination of pre-existing materials is typical, commonplace, or expected as a matter of course.

For example, the arrangement of last names in a telephone directory in alphabetical order isn't creative. Similarly, the arrangement of a business telephone directory in an alphabetized list of business types, with individual businesses listed in alphabetical order under the applicable headings, isn't original.] [109]

QUESTION NO. _____ [110]

Do you find from a preponderance of the evidence that (1) the selection, arrangement, and coordination of the preexisting materials or data comprising of the 2008 R.S. Means File was independently created by R.S. Means and not copied from another work, and (2) the selection, arrangement, and coordination of the preexisting materials or data comprising the 2008 R.S. Means File possess at least some minimal degree of creativity?

Answer "Yes" or "No" _____

If your answer to this question is "No," don't continue with your analysis of R.S. Means' claim for infringement.

---

[108] 9th Cir. MJI 17.14.

[109] 11th Cir. PCJ 9.9

[110] 11th Cir. PCJ 9.9

COPYRIGHT VALIDITY—IDEAS AND EXPRESSION (17 U.S.C. § 102(B))[111]

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work.

[Only the particular expression of an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries. In order to protect any ideas in the work from being copied, the author must secure some other form of legal protection, because ideas cannot be copyrighted. The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular expression of that idea in the work is not copied.]

[Copyright protection doesn't extend to all the elements of a copyrighted work. Elements covered by the copyright protection are called "protected matter," and noncovered elements are unprotected matter." Because unprotected matter isn't entitled to copyright protection, another author may copy it.

There are various types of unprotected matter. They include:

- a portion of the work that is not original to the author;
- a portion of the work that is in the public domain;
- expressions that are standard, stock or common to a particular subject matter or are dictated by external factors; and
- an idea, concept, principle, discovery, fact, actual event, process, or method contained in a work.

A work that's "in the public domain" is one that does not have copyright protection, so anyone may use all or part of it in another work without charge. Other materials not subject to copyright include expressions that are standard, stock or common to a particular subject matter or are dictated by external factors.[112]

In copyright law, it's important to distinguish between the ideas in a work and the author's expression of the ideas. The ideas in a work are unprotected matter. But an idea must be expressed in some way, and the expression or means of expression of an idea is protected matter.

For example, copyright law doesn't protect the idea of a determined captain hunting a giant whale. But copyright law does protect the particular expression of this idea in the book *Moby-Dick*.

---

[111] 9th Cir. MJI 17.3.

[112] *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1344 (5th Cir. 1994), opinion supplemented on denial of reh'g, 46 F.3d 408 (5th Cir. 1995).

Put another way, the author of a work has no exclusive right to the underlying ideas, concepts, principles, discoveries, facts, actual events, processes, or methods contained in a work. But the author's copyright does extend to the means by which those are expressed, described, depicted, implemented, or otherwise communicated in the work.

If you find that R.S. Means is seeking copyright protection in:

- a portion of a work that isn't original to the author;
- a portion of the work that's in the public domain;
- expressions that are standard, stock or common to a particular subject matter or are dictated by external factors; or
- an idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work,

you should exclude that material from the protected matter R.S. Means' copyright infringement claim can be based on.][113]

QUESTION NO. _____[114]

Do you find from a preponderance of the evidence that R.S. Means is seeking copyright protection in:

(1) a portion of a work that is not original to R.S. Means,

(2) a portion of the work that is in the public domain, or

(3) an idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work?

Answer "Yes" or "No" _____

If your answer to the above question is "Yes," as to any material in which R.S. Means is claiming copyright protection, you should exclude that material from the material R.S. Means' copyright-infringement claim can be based on.

---

[113] 11th Cir. PCJ 9.10

[114] 11th Cir. PCJ 9.10

COPYRIGHT VALIDITY—THE MERGER DOCTRINE

[Copyright law provides that an author can usually copy unprotected matter but not copy the manner another author selected for expressing a particular matter. But there's an exception to this prohibition if there's only one way, or only a few ways, of expressing the ideas or other unprotected matter in a work. In such cases, an author may copy the expression in the work to the extent necessary to express the unprotected matter. Stack, Powell, Construction Cost Data, LLC, Job Order Contract Group, LLC, and/or Managed JOC Solutions, LLC claim that this exception applies in this case.

This exception is called the "merger doctrine" because when there is only one way of expressing unprotected matter, the expression is said to have "merged" with the unprotected matter. The merger doctrine can apply to any unprotected matter such as ideas, facts, or events. The doctrine can apply to literal text, such as when facts can be effectively expressed only by using specific words or a limited range of words. The merger doctrine can also apply to non-literal elements of a literary work, such as when it's necessary to recount factual events in the same order as another work to present historical facts accurately and intelligibly.

The merger doctrine also applies to pictorial, graphic, and sculptural works, such as when there are a limited number of ways of representing certain sorts of objects. For example, a sculpture that depicts a mermaid will necessarily have certain similarities to other sculptures of mermaids. It will have a female human's head, arms, and torso, and the tail of a fish. These necessary similarities among sculptures of mermaids can't, under the merger doctrine, be the basis for a finding of infringement because copyright law would then protect the idea of a mermaid.][115]

QUESTION NO. _____ [116]

Do you find that R.S. Means is seeking copyright protection in matter that may only be expressed in so few ways that to protect the expression would effectively grant R.S. Means a monopoly over matter that is not protectable by copyright?

　　　　Answer "Yes" or "No" _____

If your answer to the above question is "Yes," as to any material in which R.S. Means is claiming copyright protection, you should exclude that material from the material R.S. Means' copyright-infringement claim can be based on.

[THIS IS AN IMPROPER INSTRUCTION – THE CCD PARTIES HAVE NEVER RAISED OR PLEADED THE MERGER DOCTRINE – WE OBJECT TO ITS 11TH HOUR INCLUSION]

---

[115] 11th Cir. PCJ 9.11; *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138 and n.5 (5th Cir. 1992)

[116] 11th Cir. PCJ 9.11

COPYRIGHT—PROOF OF OWNERSHIP

QUESTION NO. _____[117]

>[R.S. Means must prove ownership of a copyright in the "RS Means 2008 Data Compilation" by a preponderance of the evidence. R.S. Means can prove ownership by evidence showing that it (1) is an author (or creator) of the work; or (2) acquired legal ownership by transfer of the copyright in the exclusive rights Stack, Powell, Construction Cost Data, LLC, Job Order Contract Group, LLC, and/or Managed JOC Solutions, LLC alleged infringed]. [118]

Do you find from a preponderance of the evidence that R.S. Means is the entity that actually created the work known as the 2008 R.S. Means File?

>Answer "Yes" or "No" _____

---

[117] 11th Cir. PCJ 9.12; 9.13

[118] 11th Cir. PCJ 9.12; 9.13

71

4814-3134-0421v.1

COPYRIGHT INFRINGEMENT – GENERALLY (17 U.S.C. § 501(A)–(B))

[If you're persuaded that R.S. Means owns a valid copyright, you can consider whether the CCD Parties improperly copied R.S. Means' copyrighted material. It is the burden of R.S. Means to show that the CCD Parties infringed on its valid copyright. This is called "infringement" of a copyright. R.S. Means must show that the CCD Parties infringed on its valid copyright.

In this case, R.S. Means claims that the CCD Parties infringed its copyright in "RS Means 2008 Data Compilation" by copying part[s] of it and including the copied material in the CCD Parties' work, the "Construction Cost Catalogue". To succeed on this claim, R.S. Means must prove that CCD Parties copied the part[s] of the "RS Means 2008 Data Compilation" that the law protects.] [119]

[Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright. On R.S Means' copyright infringement claim, R.S Means has the burden of proving both of the following by a preponderance of the evidence: (1) R.S Means is the owner of a valid copyright; and (2) the CCD Parties copied original elements from the copyrighted work. If you find that R.S Means has proved both of these elements, your verdict should be for R.S Means. If, on the other hand, R.S Means has failed to prove either of these elements, your verdict should be for the CCD Parties.] [120]

[In general, the two elements of infringement are (1) access and (2) substantial similarity.] [121]

PROOF OF COPYING. To prove that the CCD Parties copied "R.S. Means 2008 Data Compilation", R.S Means

[may show that the CCD Parties]

[must show either (1) direct evidence that the CCD Parties actually copied the copyrighted material (which is rare); or (2) . indirect or circumstantial evidence that the CCD Parties

had access to R.S. Means copyrighted work and that there are substantial similarities between the "Construction Cost Catalogue" and R.S. Means' copyrighted work.

LIABILITY FOR INFRINGEMENT. One who reproduces a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.

---

[119] 11th Cir. PCJ 9.17

[120] 9th Cir. MJI 17.4.

[121] 11th Cir. PCJ 9.17

COPYRIGHT INFRINGEMENT —ACCESS AND SUBSTANTIAL SIMILARITY[122]

R.S. Means has the burden of proving that the CCD Parties copied original elements from R.S Means' copyrighted work. R.S Means may show the CCD Parties copied from the work by showing by a preponderance of the evidence that the CCD Parties had access to R.S Means' copyrighted work and that there are substantial similarities between the "Construction Cost Catalogue" and original elements of the "R.S. Means 2008 Data Compilation".

---

[122] 9th Cir. MJI 17.15.

4814-3134-0421v.1

COPYRIGHT INFRINGEMENT —ACCESS

ACCESS DEFINED[123]

> [As part of its burden in Instruction _____, R.S Means must show by a preponderance of the evidence that the CCD Parties had access to the "R.S. Means 2008 Data Compilation".]

You may find that the CCD Parties had access to R.S. Means; work the CCD Parties had a reasonable opportunity to view or access R.S. Means' work before the "R.S. Means 2008 Data Compilation" was created.

QUESTION NO. _____

Do you find by a preponderance of the evidence that any of the CCD Parties infringed the copyright of the "R.S. Means 2008 Data Compilation"? Answer "Yes" or "No" for each party:

> Construction Cost Data LLC _____
>
> Job Order Contract Group, LLC _____
>
> Managed JOC Solutions, LLC _____
>
> Mark Powell _____
>
> Benjamin Stack _____

Do you find by a preponderance of the evidence that any of the CCD Parties had access to the R.S. Means 2008 Data Compilation? Answer "Yes" or "No" for each party:

> Construction Cost Data LLC _____
>
> Job Order Contract Group, LLC _____
>
> Managed JOC Solutions, LLC _____
>
> Mark Powell _____
>
> Benjamin Stack _____

---

[123] 9th Cir. MJI 17.16.

COPYRIGHT INFRINGEMENT —SUBSTANTIAL SIMILARITY

[R.S. Means must prove that the CCD Parties' accused work is substantially similar to its copyrightable expression in the RS Means 2008 Data Compilation. the CCD Parties' accused work is substantially similar in expression to R.S. Means' if an ordinary observer/listener would conclude that the CCD Parties unlawfully took R.S. Means' protectable expression by taking material of substance and value.

Even if the degree of similarity between R.S. Means' RS Means 2008 Data Compilation and the CCD Parties' accused work is small in quantity, you can still find that there's substantial similarity if the copied portions of R.S. Means' RS Means 2008 Data Compilation are important in quality.

But if the CCD Parties' copying is minimal or trivial, you shouldn't fin infringement.][124]

SUBSTANTIAL SIMILARITY DEFINED

[Substantial similarity is often determined by the "ordinary observer" test, which provides that two works are substantially similar where the ordinary observer, unless purposefully trying to find differences, would overlook them, and believe the two works were the same.][125]

The substantial similarity may not be De Minimis because substantial similarity requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred.][126]

[To determine whether an instance of copying is legally actionable, a side-by-side comparison the R.S Means 2008 Compilation and the "Construction Cost Catalogue" to determine whether a layman would view the two works as a whole as 'substantially similar.'][127,] A layman must believe the two works are essentially the same work without any aid or suggestion or critical analysis from others. Establishing the two works are essentially the same should be spontaneous and immediate.][128]

QUESTION NO. _____[129]

Do you find by a preponderance of the evidence that an ordinary observer, upon looking at both the "Construction Cost Catalogue" and the R.S. Means 2008 Data Compilation, would conclude that there are similarities?

---

[124] 11th Cir. PCJ 9.19

[125] *R. Ready Productions, Inc. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000).

[126] *Id*. at 778.

[127] *Compaq Computer Corp. v. Ergonome, Inc*., 137 F. Supp. 2d 768, 780–81 (S.D. Tex. 2001) (citing *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir.1997)).

[128] *Id*. (citing *Peel & Co.,* 238 F.3d at 398 (quoting *Harold Lloyd Corp. v. Witwer,* 65 F.2d 1, 18 (9th Cir.1933)).

[129] 11th Cir. PCJ 9.19

75

Answer "Yes" or "No" _____

QUESTION NO. _____.][130]

Do you find by a preponderance of the evidence that the similarities are more than trivial?

Answer "Yes" or "No" _____

QUESTION NO. _____.][131]

Do you find by a preponderance of the evidence that, even if the similarities are small in quantity, they are substantial in quality?

Answer "Yes" or "No" _____

QUESTION NO. _____.][132]

Do you find by a preponderance of the evidence that the similarities are sufficiently substantial to cause an ordinary observer to conclude that the CCD Parties unlawfully took R.S. Means' protectable expression by taking material of substance and value?

Answer "Yes" or "No" _____

---

[130] 11th Cir. PCJ 9.19

[131] 11th Cir. PCJ 9.19

[132] 11th Cir. PCJ 9.19

4814-3134-0421v.1

COPYRIGHT INFRINGEMENT – VICARIOUS & CONTRIBUTORY INFRINGEMENT—
GENERALLY

[DELETE SECTION IN ITS ENTIRETY. - *Gordian has never pleaded or raised a claim for vicarious or contributory infringement.*][133]

[We have always maintained, and pleaded, that the CCD Parties were involved as a group which would include vicarious and contributory infringement.  See Second Amended Counterclaims and Complaint.]

> [Copyright may also be infringed by vicariously infringing and contributorily infringing.
>
> VICARIOUS INFRINGEMENT. A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.
>
> CONTRIBUTORY INFRINGEMENT. A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and causes or materially contributes to the activity.]

---

[133] 11th Cir. PCJ 9.20; and *Architettura Inc. v. DSGN Assocs.*, 2018 U.S. Dist. LEXIS 124468, *19-20, 2018 WL 3575878

77

DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF[134]

[DELETE IN ITS ENTIRETY. - *Gordian has never pleaded or raised a claim for vicarious infringement*.][135]

[We have always maintained, and pleaded, that the CCD Parties were involved as a group which would include vicarious and contributory infringement.  See Second Amended Counterclaims and Complaint.]

> [If you find that any of the CCD Parties infringed R.S Means' copyright in the R.S. Means 2008 Data Compilation, you may consider R.S Means' claim that the CCD Parties vicariously infringed that copyright. R.S Means has the burden of proving each of the following by a preponderance of the evidence: (1) the CCD Parties profited directly from the infringing activity of the infringing counterclaim defendant; (2) the CCD Parties had the right and ability to control the infringing activity of the infringing counterclaim defendant; and (3) the CCD Parties failed to exercise that right and ability. If you find that R.S Means proved each of these elements, your verdict should be for R.S Means if you also find that any of the CCD Parties infringed R.S. Means' copyright. If, on the other hand, R.S Means has failed to prove any of these elements, your verdict should be for the CCD Parties.

QUESTION _____

Do you find by a preponderance of the evidence that any of the following parties vicariously infringed the copyright of the R.S. Means 2008 Data Compilation? Answer "Yes" or "No" for each:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____

---

[134] 9th Cir. MJI 17.20.

[135] 11th Cir. PCJ 9.21; and *Architettura Inc. v. DSGN Assocs.*, 2018 U.S. Dist. LEXIS 124468, *19-20, 2018 WL 3575878

DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT[136]

[DELETE IN ITS ENTIRETY. - *Gordian has never pleaded or raised a claim for contributory infringement*.][137]

[We have always maintained, and pleaded, that the CCD Parties were involved as a group which would include vicarious and contributory infringement.  See Second Amended Counterclaims and Complaint.]

> [A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induces that infringing activity. If you find that any of the CCD Parties infringed R.S Means' copyright in the R.S. Means 2008 Data Compilation, you may proceed to consider R.S Means' claim that the CCD Parties contributorily infringed that copyright. To prove copyright infringement, the plaintiff must prove both of the following elements by a preponderance of the evidence: (1) the CCD Parties knew or had reason to known of the infringing activity of the infringing counterclaim defendant and (2) the CCD Parties intentionally induced the CCD Parties' infringing activity. If you find that any of the CCD Parties infringed R.S Means' copyright and you also find that R.S Means has proved both of these elements, your verdict should be for R.S Means. If, on the other hand, R.S Means has failed to prove either or both of these elements, your verdict should be for the CCD Parties.]

QUESTION _____

Do you find by a preponderance of the evidence that any of the following parties contributorily infringed the copyright of the R.S. Means 2008 Data Compilation? Answer "Yes" or "No" for each:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____

---

[136] 9th Cir. MJI 17.21.

[137] 11th Cir. PCJ 9.20-9.21; and *Architettura Inc. v. DSGN Assocs.*, 2018 U.S. Dist. LEXIS 124468, *19-20, 2018 WL 3575878

COPYRIGHT—WILLFUL INFRINGEMENT (17 U.S.C. § 504(C)(2))[138]

> [An infringement is considered willful when R.S Means has proved both of the following elements by a preponderance of the evidence that: (1) any of the CCD Parties engaged in acts that infringed the copyright; and (2) that same counterclaim defendant(s) knew that those acts infringed the copyright.]

QUESTION NO. _____

Do you find by a preponderance of the evidence that any of the following parties willfully violated the copyright laws? Answer "Yes" or "No" for each party listed below:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____

---

[138] 9th Cir. MJI 17.27.

*Unfair Competition*

[DELETE SECTION IN ITS ENTIRETY. - *This is Lanham/Trademark law (dismissed pursuant to the Court's Memorandum and Order issued on December ,7 2018 (Doc. No 112). .]*[139]

[No, this is our common law unfair competition claim set forth in Count Four of the Second Amended Counterclaims and Complaint; the Court dismissed Count Three; moreover, the CCD Parties never moved to dismiss Count Four of our Second Amended Counterclaims and Complaint]

> [Unfair competition is the use or simulation by one person of the name, symbols, or devices of a business rival in such a manner as is calculated to deceive and cause the public to deal with the second user when they intended to and would otherwise have dealt with the first user. To prove unfair competition, it is not necessary to prove that any of the CCD Parties intended to deceive the public or that anyone was actually deceived. However, either actual or probable deception must be shown, and a mere possibility of deception is not enough].

Question _____

Do you find that any of the following parties engaged in unfair competition against The Gordian Parties or R.S. Means? Answer "Yes" or "No" for each:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____]

---

[139] *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 657 n.7 (5th Cir. 2017) [*Ultraflo* holds that some state unfair competition claims may be preempted by *copyright* law, *not trademark* law. The Court's opinion only addressed our Trademark claim (Count Three)]

*Unjust Enrichment*

[DELETE SECTION IN ITS ENTIRETY. - *A jury instruction for unjust enrichment is not applicable since federal copyright claim supersedes.*][140]

[There is no developed factual record to think that federal copyright law "supersedes" our state law claim for unjust enrichment in this case; moreover, the CCD Parties never moved to dismiss Count Five of our Second Amended Counterclaims and Complaint.][141]

> [Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. When a person has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon that person to restore the benefits to the plaintiff.

Question _____

Do you find that any of the following parties were unjustly enriched at The Gordian Parties or R.S. Means' expense? Answer "Yes" or "No" for each:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____]

---

[140] *See Cooper v. Sony Music Entertainment Inc., et al.*, No. 01-0941, 2002 U.S. Dist. LEXIS 3832, 2002 WL 391693, at *3 (S.D. Tex Feb. 19, 2002) ("In the instant suit, the claims for unjust enrichment and conversion arise from allegations of retention, reproduction, distribution, and sale of the musical work, and are thus restatements of federal copyright causes of action."); *Tavormina v. Evening Star Productions, Inc.*, 10 F.Supp.2d 729 (S.D. Tex. 1998) (finding that plaintiff's unjust enrichment claim invoked the same rights as those in an action for copyright infringement).

[141] The First Court of Appeals has expressly held that "unjust enrichment is an independent cause of action." *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.–Houston [1st Dist.] 2013, no pet.); *see also Cristobal v. Allen*, No. 01-09-00126-CV, 2010 WL 2873502, at *6 n.1 (Tex. App.–Houston [1st Dist.] July 22, 2010, no pet.) (noting the disagreement among the courts of appeals). In addition, the Texas Supreme Court has referred to a "cause of action" for unjust enrichment. *See, e.g., HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998); *see also ED &F Man Biofuels Ltd v. MV FASE*, 728 F. Supp. 2d 862 (S.D. Tex. 2010) ("The Texas Supreme Court has spoken of a 'cause of action' for unjust enrichment and still refers to 'claims for unjust enrichment.').

82

*Defenses*

4814-3134-0421v.1

COPYRIGHT —INDEPENDENT WORK

The CCD Parties contend that there is no copyright infringement. There is no copyright infringement where the CCD Parties independently created the challenged work – without copying [name of plaintiff]'s copyrighted work.

QUESTION NO. _____ [142]

If you find by a preponderance of the evidence that the CCD Parties created their work independently, you should find in favor of the CCD Parties.

Do you find by a preponderance of the evidence that the "Construction Cost Catalogue" was created independently?

      Answer "Yes" or "No" _____

---

[142] 11th Cir. PCJ 9.24

84

COPYRIGHT —FAIR USE

[To determine whether the CCD Parties' use of "R.S. Means 2008 Data Compilation" qualifies as a "fair use," consider the following four factors:

1. The Purpose and Character of the CCD Parties' Use.

The first factor looks at whether the CCD Parties' use supersedes the use of R.S. Means' copyrighted work or, instead, adds new meaning, expression, or otherwise uses "R.S. Means 2008 Data Compilation" for a different purpose. It asks whether and to what extent, the CCD Parties' use is transformative. One example of a transformative use is a parody, which uses the original copyrighted work to comment on or criticize it. The first factor also looks at whether the use is commercial or noncommercial. The focus of this distinction isn't whether the motive of the use is monetary gain, but whether the user stands to profit from using the copyrighted work without paying the customary price. Analysis of the first factor can affect the remaining factors. The more transformative the use, the less likelihood that the use substitutes for the copyrighted work, and thus the less significance is to be afforded other factors, such as the effect on the potential market for or value of "R.S. Means 2008 Data Compilation".

2. The Nature of R.S. Means' Copyrighted Work.

The second factor recognizes that some works may be used more freely, or more fairly, than others. Uses of factual, purely useful, or derivative works are more likely to amount to fair use than uses of works such as fiction. Similarly, uses of published works are more likely to amount to fair use than uses of unpublished works. Also, out-of-print works that are no longer available for purchase through normal channels are more susceptible to fair use.

3. The Amount and Importance of the Portion Used.

The third factor considers whether the amount and importance of the portion taken was reasonable in light of the purpose of the CCD Parties' use and the likelihood that the CCD Parties' use will supersede the use of R.S. Means' copyrighted work.

4. The Effect on the Potential Market or Value of R.S. Means' Copyrighted Work.

Under this factor, you should consider not only actual markets for R.S. Means' copyrighted work, but also markets likely to be developed. And you should consider not only the harm caused by the CCD Parties' use, but also whether widespread uses of the same sort by others would result in a substantial adverse effect on a market, or potential market, for R.S. Means' copyrighted work. Ask yourself: does the CCD Parties' use supersede or impermissibly harm the market or potential market for R.S. Means' copyrighted work? R.S. Means can't preclude some transformative uses – even if the use may result in some harm to its markets. For example, an effective parody may lower demand for the original copyrighted work, but this isn't the type of harm considered under this factor.

Balancing the Four Factors

You should explore all four factors and weigh the results together. You should consider the purposes of copyright: first, to promote public access to knowledge and new ideas, and second, to give authors an incentive to create copyrighted works for the public's benefit.] [143]

QUESTION NO. _____ [144]

Do you find by a preponderance of the evidence that R.S. Means' RS Means 2008 Data Compilation is factual – and not creative – in nature?

      Answer "Yes" or "No" _____

QUESTION NO. _____ [145]

Do you find by a preponderance of the evidence that R.S. Means' RS Means 2008 Data Compilation was previously published?

      Answer "Yes" or "No" _____

---

[143] 11th Cir. PCJ 9.25

[144] 11th Cir. PCJ 9.25

[145] 11th Cir. PCJ 9.25

*Damages*

COPYRIGHT –DAMAGES – GENERALLY (17 U.S.C. § 504)[146]

If you find that the CCD Parties violated the copyright laws and that the violation caused injury to R.S. Means, then you must determine the amount of damages, if any, that R.S. Means is entitled to recover.

If you find for R.S Means on the copyright infringement claim, you must determine R.S Means' damages. R.S. Means is entitled to recover the actual damages suffered as a result of the infringement.

> [In addition, R.S Means is also entitled to recover any profits of the CCD Parties attributable to the infringement. R.S Means must prove damages by a preponderance of the evidence.]

---

[146] 9th Cir. MJI 17.22.

4814-3134-0421v.1

COPYRIGHT—ACTUAL DAMAGES (17 U.S.C. § 504(b))[147]

[DELETE SECTION IN ITS ENTIRETY

[The copyright owner is entitled to recover the actual damages suffered as a result of the infringement. Actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work. That amount also could be represented by the lost license fees R.S Means would have received for the CCD Parties' unauthorized use of the plaintiff's work.

DEFENDANT'S PROFITS (17 U.S.C. § 504(b))[148]

In addition to actual damages, the copyright owner is entitled to any profits of the CCD Parties attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages. You may make an award of the CCD Parties' profits only if you find that R.S Means showed a causal relationship between the infringement and the profits generated indirectly from the infringement. The CCD Parties' profit is determined by subtracting all expenses from the CCD Parties' gross revenue. The CCD Parties' gross revenue is all of the CCD Parties' receipts from the sale of a work containing or using the copyrighted work. R.S Means has the burden of proving the CCD Parties' gross revenue by a preponderance of the evidence. Expenses are all overhead costs and production costs incurred in producing the CCD Parties' gross revenue. The CCD Parties have the burden of proving the CCD Parties' expenses by a preponderance of the evidence. Unless you find that a portion of the profit from the use of a work containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The CCD Parties have the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work.]

QUESTION NO. _____

If you answered "Yes" to Questions _____ or _____, then answer the following question. Otherwise, do not answer the following question.

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate R.S. Means for its damages, if any, directly and proximately caused by any of the CCD Parties' violation of the copyright laws?

Answer in dollars and cents for each party below:

Construction Cost Data LLC _____

---

[147] 9th Cir. MJI 17.23.

[148] 9th Cir. MJI 17.24.

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____

4814-3134-0421v.1

COPYRIGHT—STATUTORY DAMAGES (17 U.S.C. § 504(C))[149]

[DELETE SECTION IN ITS ENTIRETY. - *Gordian is not entitled to statutory damages.*][150]

> If you answered "Yes" to Question _____, then answer the following question. Otherwise, do not answer the following question.

> If you find for R.S Means on the copyright infringement claim, you must determine R.S Means' damages. R.S Means seeks a statutory damage award, established by Congress for the R.S. Means 2008 Data Compilation. Its purpose is to penalize the infringer and deter future violations of the copyright laws. The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed. However, if you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

Question _____

What sum of money, if any, if paid now in cash, would penalize the infringer(s) and deter future violations of the copyright laws?

Answer in dollars and cents for each party below that willfully infringed the copyright:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____

---

[149] 9th Cir. MJI 17.25.

[150] No award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work. (17 U.S.C.A. § 412 (West)).

UNFAIR COMPETITION –LOST PROFIT DAMAGES

[DELETE SECTION IN ITS ENTIRETY SINCE LANHAM/TRADEMARK CLAIM DISMISSED]

[No, this is our common law unfair competition claim set forth in Count Four of the Second Amended Counterclaims and Complaint; the Court dismissed Count Three; moreover, the CCD Parties never moved to dismiss Count Four of our Second Amended Counterclaims and Complaint]

[If you answered "Yes" to Question _____, then answer the following question. Otherwise, do not answer the following question.]

Question _____

What sum of money, if any, if paid now in cash would fairly and reasonably compensate The Gordian Parties for its lost profits as a result of any of the CCD Parties' unfair competition?

Answer in dollars and cents for each party below:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____


QUESTION NO._____

What sum of money, if any, if paid now in cash would fairly and reasonably compensate R.S. Means for its lost profits as a result of any of the CCD Parties' unfair competition?

Answer in dollars and cents for each party below:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____

91

UNJUST ENRICHMENT – DAMAGES – DISGORGEMENT OF PROFITS

DELETE SECTION IN ITS ENTIRETY SINCE FEDERAL COPYRIGHT CLAIM SUPERSEDES]

[There is no developed factual record to think that federal copyright law "supersedes" our state law claim for unjust enrichment in this case; moreover, the CCD Parties never moved to dismiss Count Five of our Second Amended Counterclaims and Complaint.]

If you answered "Yes" to Question _____, then answer the following question. Otherwise, do not answer the following question.

QUESTION NO._____

What was the amount of profit earned by any of the following parties as a result of unjust enrichment, if any?

Answer in dollars and cents for each party below:

Construction Cost Data LLC _____

Job Order Contract Group, LLC _____

Managed JOC Solutions, LLC _____

Mark Powell _____

Benjamin Stack _____

4814-3134-0421v.1

## FINAL INSTRUCTION: DUTY TO DELIBERATE

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re- examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.[151]

---

[151] 5th Cir. PJI 3.7.

4814-3134-0421v.1