# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Courts
Southern District of Texas
FILED
*August 19, 2020*
David J. Bradley, Clerk of Court

United States Court of Appeals
Fifth Circuit
**FILED**
June 30, 2020
Lyle W. Cayce
Clerk

No. 19-20482

CONSTRUCTION COST DATA, L.L.C.; THE JOB ORDER CONTRACT GROUP, L.L.C.; MANAGED J.O.C. SOLUTIONS, L.L.C.,

    Plaintiffs - Appellants Cross-Appellees

v.

THE GORDIAN GROUP, INCORPORATED; R.S. MEANS COMPANY, L.L.C.,

    Defendants - Appellees Cross-Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-114

Before DAVIS, GRAVES, and DUNCAN, Circuit Judges.

PER CURIAM:*

    Plaintiffs, Construction Cost Data, L.L.C., and Job Order Contracting Group, L.L.C. (collectively "CCD"), appeal the district court's judgment in favor of Defendants, The Gordian Group, Inc., and R.S. Means Company, L.L.C. (collectively "Gordian"). CCD argues that (1) the district court violated Rule 48, which requires a unanimous verdict and a polling of the jury upon a party's

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

request, when it issued its judgment; (2) the district court erred in entering judgment for Defendants based on the unanimous answer to Jury Question 12, which related to the *Noerr-Pennington* affirmative defense, because the answers to the jury interrogatories were irreconcilable and/or indicated jury confusion; (3) the district court abused its discretion in excluding evidence at trial of Defendants' alleged fraudulent procurement of their trademark and copyright registrations; and (4) the district court erred in concluding that *Noerr-Pennington* immunity was applicable here. Defendants cross-appeal the district court's summary-judgment dismissal of their trademark infringement claim against Plaintiffs. For the reasons set forth below, we conclude that the parties' various challenges to the district court's judgment are without merit. Therefore, we AFFIRM.

## I. BACKGROUND

Job order contracting is a construction procurement method allowing multiple jobs from a single bid contract. An integral component of job order contracting is the "unit price book," which provides all of the relevant preset prices, including but not limited to labor, material, and equipment costs, for construction tasks a contractor might be called upon to provide during the course of the contract. In 2015, CCD introduced a unit price book called the "Construction Cost Catalogue" into the job order contracting industry.

Gordian contended that Plaintiffs' Construction Cost Catalogue infringed on the copyright and trademark of its unit price book, the "Construction Task Catalog." Gordian sent cease-and-desist letters to CCD and a cooperative association working with CCD, asserting that CCD was improperly using Gordian's proprietary material and intellectual property through its Construction Cost Catalogue. As a result of the cease-and-desist letters, CCD lost contracts and future business opportunities. CCD subsequently filed suit in state court against Gordian for tortious interference

with contract, antitrust violations, and business disparagement. Gordian removed the case to federal court and filed counterclaims against CCD for copyright and trademark infringement, as well as unfair competition.[1]

CCD filed an amended complaint, which Gordian moved to dismiss under Rule 12(b)(6). Gordian argued that it was immune from any liability resulting from its cease-and-desist letters pursuant to the *Noerr-Pennington* doctrine and that the "sham" exception to the doctrine did not apply because the letters were not objectively baseless.[2] The magistrate judge issued a report recommending that Gordian's motion to dismiss be denied, which the district court adopted. Gordian later filed a motion for summary judgment, reasserting that it was entitled to *Noerr-Pennington* immunity and that therefore Plaintiffs' claims should be dismissed. The district court denied the motion.

CCD also filed a motion for partial summary judgment seeking dismissal of Gordian's counterclaims of copyright and trademark infringement. The district court determined that "Construction Task Catalog" was not entitled to trademark protection because it was a generic term. Consequently, the district court granted summary judgment in favor of CCD and dismissed Gordian's

---

[1] Gordian also filed a third-party demand against Benjamin Stack and Mark Powell, who were alleged to have formed CCD.

[2] The *Noerr-Pennington* doctrine comes from two Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). "The essence of the doctrine is that the parties who petition the government [including the courts] for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Video Int'l Prod., Inc. v. Warner-Amex Cable Comm'cn, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988). The doctrine has been expanded to include more than just antitrust claims, but also state law claims such as tortious interference with contract. *Id.* at 1084. It has also been interpreted to cover pre-litigation conduct such as cease-and-desist letters. *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367-68 (5th Cir. 1983). The doctrine is inapplicable, however, if Defendants' activities were "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits" and, if so, the baseless activities conceal an attempt to harass or interfere directly with the business relationships of a competitor. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (describing "sham" exception).

No. 19-20482

trademark infringement claim. As to Gordian's copyright infringement claim, however, the district court concluded that there were genuine issues of material fact for trial and denied summary judgment.

The case then proceeded to trial before a jury. The jury charges were lengthy, and there were twenty-seven special jury interrogatories. The jury could not reach a unanimous decision on five of the questions. Although instructed not to do so, the jury indicated the number of jurors voting "yes" and the number voting "no" next to the non-unanimous answers. After the district court read the jury's answers on the record, the court noted that the verdict was "not immediately comprehensible" and excused the jury "so the lawyers [could] debate the verdict form."

Gordian argued that the case was over because the jury's unanimous answer to Question 12 entitled Gordian to *Noerr-Pennington* immunity from all of CCD's claims, and the jury's unanimous answer to Question 22 required dismissal of Gordian's copyright infringement claim against CCD. CCD asserted that the answer to Question 12 was inconsistent with the answers to Questions 9, 10, and 11. CCD further requested that the district court give the jury a charge under *Allen v. United States*[3] and allow the jury to deliberate further regarding the non-unanimous answers, but the district court denied the request. Instead, the district court ordered the parties to submit briefs regarding how it thereafter should proceed and stated that "if we'll have the jury back, let's do it quickly."

CCD filed a motion requesting that the jury be recalled to continue deliberations or that a new trial be ordered under Rule 49. CCD reasserted that the jury's response to Question 12 contradicted the responses to Questions 9-11. CCD further argued that the jury's award of $2.33 million

---

[3] 164 U.S. 492 (1896).

4

dollars in damages in favor of CCD and the jury's responses on the whole showed that the jury believed Gordian unjustifiably harmed CCD and that Gordian should be ordered to pay damages as a result. Gordian reasserted that the district court should enter judgment in accordance with the jury's unanimous answer to Question 12 calling for application of *Noerr-Pennington* immunity and its unanimous answer to Question 22 in which the jury determined that Gordian failed to prove copyright infringement.

After hearing argument on CCD's motion, the district court agreed with Gordian and entered a final judgment in favor of Gordian on CCD's claims of tortious interference with contract, antitrust violations, and business disparagement, and in favor of CCD on Gordian's counterclaim of copyright infringement. The district court also issued a lengthy memorandum and order denying CCD's Rule 49 motion for continued jury deliberations or new trial.

CCD then filed a Rule 59 motion for new trial or alternatively motion to modify judgment. CCD re-urged the grounds for a new trial set forth in its Rule 49 motion. Additionally, CCD argued that under Rule 48, which requires a unanimous verdict unless the parties stipulate otherwise, the district court had only two options in the face of the non-unanimous answers returned by the jury: recall the jury and encourage further deliberations or declare a mistrial. The district court denied CCD's Rule 59 motion, noting that it previously addressed many of CCD's arguments in its decision denying CCD's Rule 49 motion. CCD and Gordian filed timely notices of appeal.

## II. DISCUSSION

### A. Rule 48

On appeal, CCD reasserts its argument that the district court violated Rule 48 of the Federal Rules of Civil Procedure when it issued its judgment.

No. 19-20482

Under Rule 48, "[u]nless the parties stipulate otherwise, the verdict must be unanimous . . . ."[4] The rule further provides:

> After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity or lack of assent by the number of jurors that the parties stipulated to, the court may direct the jury to deliberate further or may order a new trial.[5]

CCD argues that the district court's judgment violates the above provisions of Rule 48 because the verdict was not unanimous and because it was "deprived of the right to conduct a jury poll." It further contends that in violating Rule 48, the district court also violated its Seventh Amendment right to a jury trial, and that this error is per se reversible.

### 1. Unanimity Requirement

CCD is correct that Rule 48 requires a unanimous verdict. Under this court's precedent, however, "a jury's failure to reach a verdict on every interrogatory does not prevent a court from accepting the properly-answered interrogatories."[6] Specifically, "[p]roperly-answered interrogatories may support a verdict on the issues to which they respond. This is true even if other claims in the case remain unsettled."[7]

Other circuits have noted the various options available to a district court when a jury fails to agree unanimously on all interrogatory answers.[8] These options include (1) resubmitting the issues to the jury for further deliberation in the hope of obtaining unanimous answers, (2) asking the parties if they would be willing to forego the requirement of unanimity and accept a majority

---

[4] FED. R. CIV. P. 48(b).
[5] FED. R. CIV. P. 48(c).
[6] *Bridges v. Chemrex Specialty Coatings, Inc.*, 704 F.2d 175, 180 (5th Cir. 1983) (citations omitted).
[7] *Id.*
[8] *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1580-81 (Fed. Cir. 1995).

6

No. 19-20482

verdict, (3) entering judgment on the basis of the unanimous verdicts if they are dispositive of the case, (4) declaring the entire case a mistrial and ordering the case reheard in its entirety, and (5) ordering a partial retrial only as to those issues which were not unanimously agreed upon by the jury.[9]

In this matter, the district court entered judgment on the basis of the jury's unanimous answer to Question 12, which it held established that the "sham" exception to *Noerr-Pennington* immunity did not apply and consequently required dismissal of all of CCD's claims against Gordian. The district court also entered judgment on the basis of the jury's unanimous answer to Question 22, which established that Gordian did not meet its burden of proof on its claim of copyright infringement and consequently required dismissal of Gordian's claim against CCD. Because the jury's unanimous answers to Questions 12 and 22 were dispositive of all claims in this matter, the district court rightly entered judgment in reliance on those answers.[10] Therefore, CCD's argument that the district court violated Rule 48 in entering judgment because not all of the jury's answers were unanimous is without merit.

## 2. Polling of the Jury

CCD argues that the district court also violated Rule 48 by denying CCD an opportunity to poll the jury. CCD maintains that, contrary to Gordian's contention, it did not waive its right to poll the jury, but that such right was taken away "when the court secretly discharged the jury."

As reflected above, Rule 48 specifies that a party may request the district court to poll the jury "[a]fter a verdict is returned but before the jury is discharged," and that if a party makes such request within that time period,

---

[9] *Id.* at 1581.
[10] *See id.*; *Bridges*, 704 F.2d at 180.

"the court *must*" poll the jurors individually. The trial transcript reveals that after the jury returned its verdict and the district court read the verdict on the record, the district court asked the forewoman if its reading was correct, and the forewoman answered affirmatively. Immediately thereafter, the district court stated: "I think what we need to do right now is excuse the jury so the lawyers can debate the verdict form." After the jury exited, the district court said: "I think it's going to take us a long time to figure this out. Some of the questions were not answered unanimously. I would propose that we send the jury home today with the possibility of recalling them. But what are your thoughts on it?"

CCD agreed with the court's suggestion. Gordian asserted that because the jury answered Question 12 unanimously, it was immune from all of CCD's claims under the *Noerr-Pennington* doctrine. The district court responded, "That's what we got to figure out. This verdict is not immediately comprehensible." The district court then stated: "Normally at the end of a trial, the Court, I, shake hands with the jury, and we offer them a chance to take a photo, group photo. I'm inclined to think I should do that, and then I'll tell them we may need them back another day." Neither party objected.

When the district court returned, the court stated that it did not know "quite what to do with [the verdict]" and that it did "think there is some inconsistency." Gordian reasserted that that the unanimous answer to Question 12 meant Gordian was immune from all of CCD's claims and that the unanimous answer to Question 22 "found against [Gordian] on copyright infringement." Gordian posited that "the case is therefore over." CCD disagreed, contending that the jury should continue to deliberate the non-unanimous answers, and that, in any event, the non-unanimous answers to Questions 9-11 were inconsistent with the unanimous answer to Question 12. The district court denied CCD's request to give the jury an *Allen* charge, and

8

it requested briefing on how to proceed. The court stated: "If we'll have the jury back, let's do it quickly."

CCD argues that based on the above, it reasonably understood that after briefing was submitted, the jury would be re-called, and trial would resume to determine if a complete and unanimous verdict could be obtained. It asserts that "[t]he verdict was not final and a request to poll the jury was premature."

CCD is mistaken that a request to poll the jury would have been premature. Rule 48 specifically denotes the time period for requesting a poll: "[a]fter a verdict is returned but before the jury is discharged."[11] In this case, a verdict was clearly returned and read aloud by the district court, with the forewoman confirming that the district court read the verdict correctly. CCD could have requested a poll of the jury starting at that point.

CCD's argument that the district court "deprived" it of its "opportunity to request a jury poll" is also without merit. CCD had the opportunity to request a poll any time after the verdict was read. Moreover, the district court did not "secretly" discharge the jury. Although the district court "excused" the jury after reading the verdict, the district court solicited the parties' consent to proceed with what it would normally do "at the *end* of a trial" and that it would inform the jurors that they "*may*" need to come back another day. CCD did not object to this procedure. The district court's actions and statements should have put CCD on notice that the jury was potentially being discharged. Under these circumstances, CCD's argument that it was denied the opportunity to poll the jury in violation of Rule 48 is without merit.

B. **District Court's Reliance on Answer to Jury Question 12**

CCD reasserts its argument that the jury's interrogatory answers were irreconcilable and/or indicated jury confusion such that the district court erred

---

[11] FED. R. CIV. P. 48(c).

in entering judgment for Defendants based on the unanimous answer to Question 12, which related to *Noerr-Pennington* immunity. Specifically, CCD asserts that Jury Questions 9-12 substantively address the same factual determination, i.e., whether there was any merit to Gordian's allegations of infringement as stated in its cease-and-desist letters. CCD submits that the jury's responses to Questions 9, 10, and 11 directly contradict the answer to Question 12; therefore, the judgment should be reversed and the conflicting issues retried. As explained below, we disagree.

### 1. Standard of Review

This court "grant[s] considerable latitude to the trial court when interpreting special interrogatories since it is in a better position to analyze the jury's intention[s] and thus is charged, in the first instance, with the obligation of giving effect to those intentions in light of the surrounding circumstances."[12] Therefore, we review the "trial court's treatment of special interrogatories only for abuse of discretion."[13] Similarly, we review the trial court's denial of a motion for new trial only for abuse of discretion.[14]

### 2. Jury Questions 9-12

Jury Questions 9-11 were included under the section of the jury packet entitled "Defenses," and the subsection entitled "Legal Justification." The questions asked whether Defendants had a "good-faith belief that they had a valid basis to send cease-and-desist letters regarding their copyrighted material." Question 12 was included in the jury packet under the subsection entitled "*Noerr-Pennington Doctrine*" and had two parts. The first part asked whether Gordian's pre-litigation correspondence was "objectively baseless in

---

[12] *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 670 (5th Cir. 2002) (internal quotation marks and citation omitted).
[13] *Id.* (citation omitted).
[14] *Id.*

the sense that no reasonable litigant could reasonably expect success on the merits." The second part of Question 12 asked: "If the activity of the [Defendants] was objectively baseless, was the subjective intent merely to interfere with the CCD parties?"

The court's charges immediately preceding Question 12 specifically described the circumstances under which a lawsuit was "objectively baseless"—"no reasonable litigant could realistically expect to win." The charges instructed the jurors that if they found Gordian's lawsuit "not objectively baseless," then they did not need to consider the second part of Question 12, whether the lawsuit was "an attempt to harass or interfere with the business relationships of the Plaintiffs."

The jury unanimously answered "no" to the first part of Question 12, which asked: "Was the [Defendants'] pre-litigation correspondence objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits?" The jury put a slash next to the answer to the second part of Question 12, indicating that, as instructed, it did not consider whether the Defendants' "subjective intent [was] merely to interfere with the CCD Parties" because it found that Defendants' lawsuit was not objectively baseless.

CCD argues that Questions 9-11, which asked whether Defendants had "a good-faith belief that they had a valid basis to send cease-and-desist letters regarding their copyrighted material," presented a similar factual question as the first part of Question 12, which asked whether Defendants' correspondence was "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." Because the jury answered, by a vote of 11 to 1, "no" to Questions 9-11, and unanimously answered "no" to Question 12, CCD contends that the district court's judgment must be reversed because it is based on contradictory factual findings.

11

No. 19-20482

CCD is correct that if answers to jury interrogatories reflect inconsistent fact findings relating to a claim, the district court may not enter judgment on that claim and instead must order a new trial.[15] This rule, however, applies only when the jury's inconsistent answers are unanimous.[16] Because the answers to Questions 9-11 were not unanimous, they cannot be considered, in the first instance, as jury findings. But we conclude that even if the jury's answers to Questions 9-11 were unanimous, there would be no inconsistency with the answer to Question 12. CCD submits that Questions 9-11 essentially asked the jury whether Defendants "believed they had any valid basis" for sending the cease-and-desist letters threatening litigation for infringement. CCD contends that when 11 jurors answered "no" to Questions 9-11, the jurors found that Defendants "knew their infringement claims weren't valid." CCD argues that such finding is inconsistent with the jury's unanimous finding in Question 12 that the cease-and-desist letters were not objectively baseless.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, the case in which the Supreme Court set forth the elements needed to establish the "sham" exception to the *Noerr-Pennington* doctrine, the petitioner similarly argued that the respondent was not entitled to *Noerr-Pennington* immunity because the respondent "did not honestly believe that the infringement claim was meritorious."[17] The Court described the question presented by the case as: "whether litigation may be sham merely because a subjective expectation of success does not motivate the litigant."[18] The Court

---

[15] *See Guidry v. Kem Manufacturing, Co.*, 598 F.2d 402, 408 (5th Cir. 1979).
[16] *See* FED. R. CIV. P. 48(b) ("Unless the parties stipulate otherwise, the verdict must be unanimous . . . .").
[17] 508 U.S. 49, 54 (1993) (internal quotation marks and citation omitted).
[18] *Id.* at 57.

12

"answered this question in the negative and h[e]ld that an objectively reasonable effort to litigate cannot be sham regardless of subjective intent."[19]

The Court's decision in *Professional Real Estate Investors* makes clear that even if a party does not believe its infringement claim has merit, he may still be entitled to *Noerr-Pennington* immunity if the claim has objective merit.[20] We disagree that the jury's 11-1 answer that Defendants did not "have a good-faith belief that they had a valid basis to send cease-and-desist letters regarding their copyrighted material" indicates jury confusion or is inconsistent with the jury's unanimous finding that the letters were not "objectively baseless." The Court in *Professional Real Estate Investors* considered such a possibility and held that a party's subjective expectation, intent, and/or motivation regarding its infringement claim were not relevant if there was proof of the "objective legal reasonableness of the litigation."[21]

Based on the foregoing, we conclude that it was not an abuse of discretion for the district court to rely on the unanimous answer to Question 12 and render judgment for Gordian based on the jury's unanimous finding that the cease-and-desist letters were not objectively baseless.[22]

## C. Alleged Evidence of Fraud

CCD argues that the district court abused its discretion when it excluded evidence at trial regarding Gordian's procurement of trademark and copyright registrations. CCD asserts that Gordian lied in its applications and obtained

---

[19] *Id.* (footnote omitted).
[20] *Id.* at 60.
[21] *Id.* at 66.
[22] At oral argument, CCD raised for the first time that the jury's unanimous answer to Question 8, in which the jury determined that Defendants committed business disparagement, precluded application of *Noerr-Pennington* immunity. We do not generally consider points raised for the first time at oral argument. *Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169, 174 (5th Cir. 2015).

13

No. 19-20482

the registrations through fraud. It further contends that the exclusion of this evidence prevented it from showing that Gordian's litigation was a "sham."

CCD contends that when Gordian applied for a trademark registration, it stated in its application that it previously held a trademark for Construction Task Catalog on the Principal Register, when in fact the mark was on the Supplemental Register. As Gordian argues, Gordian's registration of the Construction Task Catalog on the Supplemental Register was a matter of public record. Gordian states that this was an "unintentional error" that an examiner with the Trademark Office would easily check as all trademark registrations are public record.

In order to prove fraud on the Trademark Office, CCD would need to show that the Trademark Office reasonably relied on a false representation of material fact.[23] CCD would be unable to do so here because it would not be reasonable for the Trademark Office to rely on the error in Gordian's application when the public record would clearly show that its trademark was previously on the Supplemental Register. Moreover, as Gordian points out, CCD did not call any witnesses from the Trademark Office, or any experts in the field, who could testify that such reliance would be reasonable. Allowing introduction of this evidence and argument that such error constituted fraud would, as the district court determined, be highly prejudicial to Gordian under a Rule 403[24] balancing test.

The same is true with respect to Gordian's applications for copyright registration. CCD contends that Gordian lied in its second copyright

---

[23] See Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc., 951 F.2d 684, 693 n.14 (5th Cir. 1992).

[24] FED. R. EVID. R. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

No. 19-20482

application that its first application had been approved and that only "minor" portions of its data were provided by a third party. Again, as Gordian alleges, CCD did not have an expert on this issue and it did not seek testimony from the examiners involved from the Copyright Office to testify regarding any reasonable reliance on such alleged "lies." As the district court determined, raising the issue of fraud under these circumstances would be highly prejudicial to Gordian. In sum, the district court did not abuse its discretion in excluding such evidence.

### D. Applicability of *Noerr-Pennington*

CCD argues that *Noerr-Pennington* immunity in this matter was misapplied and is not dispositive. Specifically, CCD asserts that the district court erroneously focused on whether the "sham" exception to the doctrine was established without first deciding whether the doctrine should have even been applied. It contends that "[b]ecause misrepresentations and false statements are not entitled to First Amendment protections, they cannot be immunized under *Noerr-Pennington* whether or not any exception is applicable."

As discussed above, however, the district court did not abuse its discretion in excluding the evidence of Gordian's alleged fraudulent procurement of trademark and copyright registrations. CCD argues that, nevertheless, the cease-and-desist letters were "false, or at best, misleading" because the jury unanimously found no copyright infringement and the district court found no trademark infringement. But, these findings do not establish that Gordian lied or made misrepresentations in the cease-and-desist letters; rather, they show that Gordian did not prove the elements of trademark and copyright infringement. The same is true of the jury's favorable findings as to CCD's affirmative claims. Those findings showed that CCD established the

elements of its affirmative claims,[25] and not that Gordian lied or made misrepresentations in its letters.

In sum, we conclude that the district court properly applied the *Noerr-Pennington* doctrine in this matter, and that CCD's challenges to the application of the doctrine are without merit.

**E. Summary Judgment Ruling**

On cross-appeal, Defendants argue that the district court erred in dismissing on summary judgment their claim against CCD for trademark infringement. We review a district court's grant of summary judgment de novo.[26] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27]

The district court found, and CCD argues on appeal, that the "Construction Task Catalog" mark is generic and thus not entitled to trademark protection. Gordian contends that the mark is descriptive, and that there was a genuine issue of material fact as to whether it was entitled to trademark protection.

To be protectable, a mark must be "distinctive" in one of two ways—either "inherently" or "by achieving secondary meaning in the mind of the public."[28] A mark is inherently distinctive "if its intrinsic nature serves to

---

[25] Although CCD argued at oral argument that the jury found that Gordian made a false statement in its answer to Question 8, we do not review arguments raised for the first time at oral argument. In any event, CCD is unable to show that the district court plainly erred.

[26] *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 920 F.3d 243, 247 (5th Cir. 2019).

[27] FED. R. CIV. P. 56(a).

Because the evidence of the Defendants' "alleged fraud" was properly excluded, we need not decide whether misrepresentations and false statements can be immunized under the *Noerr-Pennington* doctrine.

[28] *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

identify a particular source,"[29] and acquires distinctiveness if, "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself."[30]

Trademarks fall into five "categories of generally increasing distinctiveness":[31] (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful.[32] Suggestive, arbitrary, and fanciful marks are inherently distinctive.[33] Generic marks cannot be distinctive, and descriptive marks are distinctive only if they have acquired a secondary meaning.[34]

Registration of a mark with the Patent and Trademark Office "constitutes *prima facie* evidence that the mark is valid,"[35] but the presumption "may be rebutted by establishing that the mark is not inherently distinctive."[36] There was no dispute on summary judgment that the "Construction Task Catalog" mark is *not* inherently distinctive.[37] So, CCD overcame the presumption of validity that accompanied Gordian's registration of the mark.

"A generic term is one which identifies a genus or class of things or services, of which the particular item in question is merely a member."[38]

---

[29] *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000) (quotations omitted).
[30] *Id.*
[31] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).
[32] *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 537 (5th Cir. 2015).
[33] *Id.*
[34] *Id.*
[35] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010).
[36] *Id.; see also Vison Ctr. v. Optiks, Inc.*, 596 F.2d 111, 119 (5th Cir. 1979) ("this presumption is rebuttable and may be overcome by establishing the generic or descriptive nature of the mark.").
[37] On summary judgment, CCD argued the mark was generic, and Gordian argued it was descriptive. Neither category is "inherently distinctive."
[38] *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 845 (5th Cir. 1990).

Essentially, a mark is generic if it describes "what the product or service is, not its source or where it came from."[39] In contrast, a descriptive mark is one that "identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients."[40]

The district court did not err in dismissing on summary judgment Gordian's trademark infringement claim based on its determination that "Construction Task Catalog" is a generic term not entitled to trademark protection. The "Construction Task Catalog" mark is generic because it is exactly that: a catalog of construction tasks.[41] Gordian argues the actual name of the product is a "job order contracting unit price book." But, as the district court noted, a term need not be a product's only possible name to be generic.[42] What's more, the district court's reasoning was supported by record evidence that "job order contracting unit price books" "are often referred to as construction catalogs."

Because the "Construction Task Catalog" mark simply describes the nature of the product in common industry terms, the district court did not err in classifying it as "generic." And because a generic term can never be trademarked, summary judgment dismissing Gordian's trademark infringement claim was appropriate.

### III. CONCLUSION

Based on the foregoing, the district court's judgment is AFFIRMED.

---

[39] McCarthy on Trademarks and Unfair Competition § 12:1 (4th ed. 2010).
[40] *Amazing Spaces*, 608 F.3d at 241 (citation omitted).
[41] *See, e.g., Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1041 (D.C. Cir. 1989) ("It is difficult to imagine another term of reasonable conciseness and clarity by which the public refers to former members of the armed forces who have lost their vision.").
[42] *See, e.g.,* McCarthy § 12:9 ("There is usually no one, single and exclusive generic name for a product. Any product may have many generic designations"); *Blinded Veterans Ass'n*, 872 F.2d at 1041 ("A term need not be the sole designation of an article in order to be generic").